## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 3:20-cr-31 |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| DERIK CAROTHERS, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Before the Court are five motions filed by Defendant Derik Carothers ("Defendant"): (1) a motion to dismiss the Conspiracy charge at Count One, (ECF No. 96); (2) a motion to compel production of Rule 404(b) evidence, (ECF No. 98); (3) a motion to dismiss the Section 924(c) charge at Count Two, (ECF No. 100); (4) a motion for court order to preserve rough notes, (ECF No. 102); and (5) a motion to sever.  (ECF No. 104).  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion at ECF No. 102, and it **DENIES** Defendant's motions at ECF Nos. 96, 98, 100, and 104.

## I.     BACKGROUND

On December 1, 2020, a grand jury sitting in the Western District of Pennsylvania indicted Defendant and his co-defendant, Isiaha Waulk ("Mr. Waulk"), on four charges.  (ECF No. 1). Relevant here are two of those charges: (a) conspiracy to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), (*id.* at 1), and (b) possession of firearms in furtherance of a drug trafficking crime in violation of 21 U.S.C. § 924(c)(1)(A)(i).  (*Id.* at 2).  On January 13, 2021, while Defendant was serving an unrelated term of imprisonment for a state court sentence, the Court ordered that Defendant be held pending trial in this matter as well.  (ECF No. 29).

The Court has held Defendant in pretrial detention since that time, with trial currently set for May 22, 2023.  (ECF No. 110).  Save for one postponement of trial from March 3, 2021, to May 3, 2021, that the Court imposed sua sponte in accordance with Chief Judge Hornak's "Administrative Order Concerning Jury Trials and Certain Other Proceedings Relative to COVID-19 Matters," (ECF No. 33) (citing Case No. 2:20-MC-394, ECF No. 19), all other continuances in this matter have been requested by Defendant and/or Mr. Waulk.  (*See* ECF Nos. 31, 33, 39, 40, 43, 44, 51, 60, 61, 65, 67, 82, 83, 92, 109).  Although some of these continuances were requested by Mr. Waulk, who is currently undergoing an independent psychiatric evaluation to determine competency, (*see, e.g.*, ECF No. 92), many of the continuances were requested by Defendant himself.[1]  Nevertheless, on September 15, 2022, Defendant sent a letter to the Court expressing his "concern[] and distress[]" regarding "the amount of time it is taking to conclude these proceedings[,]" and asking for assurance of "a more expeditious ending to this affair."  (ECF No. 91).  In this letter, Defendant also asserts that "[t]he 846(b)(1)(C), and . . . 924(C) Counts [have] zero merit and no evidence supporting the accusations."  (*Id.*).

On October 10, 2022, Defendant raised these issues and others in five separate motions:

(1)  Motion to Dismiss Count One (Conspiracy) (ECF No. 96);

---

[1] During a pretrial conference on April 7, 2021, Defendant and Mr. Waulk made a joint oral motion to continue trial until August 2021, (ECF No. 39), and the Court subsequently continued trial from June 1, 2021, to August 16, 2021.  (ECF No. 40).  Both co-defendants made another joint oral motion to continue trial during a conference on July 9, 2021, (ECF No. 43), and the Court subsequently continued trial from August 16, 2021, to October 25, 2021.  (ECF No. 44).  On December 15, 2021, Defendant moved for the Court to continue trial for another 90 days, (ECF No. 60), and the Court subsequently continued trial from January 24, 2022, to April 25, 2022.  (ECF No. 62).  On March 15, 2022, Defendant moved for the Court to continue trial another 90 days, (ECF No. 65), and the Court subsequently continued trial from April 25, 2022, to August 8, 2022.  (ECF No. 66).  On July 7, 2022, Defendant moved to adopt Mr. Waulk's motion to continue trial at ECF No. 82, thereby requesting that trial be continued for another five months, (ECF No. 83), and the Court subsequently continued trial from August 8, 2022, to November 7, 2022.  (ECF No. 85).

(2) Motion to Compel Government to Provide Defendant with Written Statement of Uncharged Misconduct Evidence and/or Federal Rule of Evidence 404(B) Evidence and for Pretrial Production of Such Evidence (ECF No. 98) (hereinafter, the "Motion to Compel");

(3) Motion to Dismiss Count Two (924(c)) (ECF No. 100);

(4) Motion for Order of Court to Preserve Rough Notes (ECF No. 102); and

(5) Motion to Sever (ECF No. 104).

On the same day, Defendant filed briefs in support of each of his five motions. (ECF Nos. 97, 99, 101, 103, 105). On December 1, 2022, the Government filed an omnibus response urging the Court to reject each of these motions. (ECF No. 110).

## II.   DISCUSSION

For the reasons provided below, the Court will grant Defendant's motion at ECF No. 102 as to the preservation of rough notes falling within the purview of *United States v. Vella*, 562 F.2d 275 (3d Cir. 1977), and *United States v. Ammar*, 714 F.2d 238 (3d Cir. 1983), but it will deny that motion as to the preservation of rough notes that do not fall within those categories. The Court will also deny Defendant's motions at ECF Nos. 96, 98, 100, and 104 in their entirety.

### a.   Motions to Dismiss (ECF Nos. 96, 100)

The Court will deny Defendant's Motion to Dismiss the Conspiracy charge at Count One, (ECF No. 96), and his Motion to Dismiss the Section 924(c) charge at Count Two, (ECF No. 100), for the same reason: "[u]nless there is a stipulated record, or unless immunity issues are implicated, a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence." *U.S. v. DeLaurentis*, 230 F.3d 659, 660 (3d. Cir. 2000). "A district court's review of the facts set forth in the indictment is limited to determining whether, assuming all of those facts as true, a jury could find that the defendant committed the

offense for which he was charged." *United States v. Jackson*, No. 20-CR-118, 2021 WL 2291828, at *3 (W.D. Pa. June 4, 2021) (citing *DeLaurentis*, 230 F.3d at 660).

Here, Defendant bases both motions on his assertion that the indictment included insufficient evidence to support a conspiracy charge.  (ECF No. 96 at 2) (asserting that "there appears to be no evidence to establish" that "the elements of conspiracy are present"); (ECF No. 100 at 2) (arguing that "the government cannot establish the first element of a 924(c) charge" without the conspiracy count, which must be dismissed "[f]or the reasons set forth in defendant's Motion to Dismiss Count One").  However, he does not assert that there is a stipulated record, that there are immunity issues implicated by the indictment, or that there is any other reason why the Court should not assume all of the facts set forth in the indictment are true.  He also does not assert that the indictment failed to "inform [him] of the statute he is charged with violating, list[] the elements of a violation under the statute, and specif[y] the time period during which the violations occurred[,]" which is what an indictment must generally do to satisfy criminal pleading requirements. *Jackson*, 2021 WL 2291828, at *2.  The Court has reviewed the indictment and finds that it does indeed satisfy those requirements.

Based on the above, the Court finds that Defendant has failed to assert a valid ground on which the Court could grant either of his motions to dismiss.  It will therefore deny both of these motions.

### b.  Motion to Compel (ECF No. 98)

The Court will deny Defendant's Motion to Compel at ECF No. 98 because it has already ordered the Government to produce the evidence that Defendant seeks in advance of trial. Defendant asks the Court to "order the Government to produce to him a written statement of any

uncharged misconduct and/or Federal Rule of Evidence 404(b) evidence and order the Government to produce such evidence for inspection . . . forthwith." (ECF No. 98 at 2). He bases this request on his assertion that "[w]aiting for trial for disclosure of such evidence will materially delay the trial of this matter." (ECF No. 99 at 1). However, the Court has already instructed the Government to "give to Defendant any evidence of Defendant's uncharged conduct that the Government intends to introduce at the trial under Fed. R. Evid. 404(b)" "[a]t least 7 calendar days before trial[.]" (ECF No. 110 at 4). Because Defendant has not provided the Court with any reason why he would need more than seven days' notice of Rule 404(b) evidence, the Court will leave its previous scheduling order undisturbed and deny Defendant's Motion to Compel.

### c.  Motion for Order to Preserve Rough Notes (ECF No. 102)

Defendant has filed a "Motion for Order of Court to Preserve Rough Notes," in which he requests that the Court order the Government to preserve all rough notes conducted by "federal and state investigative/enforcement officers . . . during the course of the investigation and/or after the indictment was returned . . . pending a determination as to whether they are discoverable in this case." (ECF No. 102 at 1). As explained below, the Court will grant this motion in part and deny it in part. Specifically, the Court will grant this motion as to rough notes falling within the purview of *United States v. Vella*, 562 F.2d 275 (3d Cir. 1977), and *United States v. Ammar*, 714 F.2d 238 (3d Cir. 1983), but it will deny the motion as to materials not falling within the purview of these cases.

The Third Circuit has clearly instructed that "the rough interview notes of [law enforcement officers] should be kept and produced so that the trial court can determine whether the notes should be made available to the [moving party] under the rule of *Brady v. Maryland*, 373

U.S. 83 (1963), or the Jencks Act." *Vella*, 562 F.2d at 276.  The Government must also retain rough reports under these authorities as well.  *See Ammar*, 714 F.2d at 259.  The Government does not deny these legal obligations, but it nonetheless urges the Court to deny Defendant's motion on the basis that it recognizes its obligation to preserve *Brady* material and has already advised its agents to preserve traditional rough notes of the sort covered by *Vella* and *Ammar*.  (ECF No. 108 at 6–7).  In essence, the Government appears to argue that an order instructing it to preserve its rough notes would be rendered moot by the measures it has already taken to preserve them.

However, in past cases, this Court has ordered the Government to retain rough notes even when the Government has "already instructed law enforcement officers to retain" material "fall[ing] within the purview of *Vella* and *Ammar*."  *United States v. Portis*, No. 19-CR-133-7, 2020 WL 7065832, at *4 (W.D. Pa. Dec. 3, 2020).  Of course, the Court will not order the Government to retain "material not falling within the above categories" because the Government has no obligation to preserve materials of that sort.  *Id*.  Because Defendant does not indicate whether he is requesting solely material falling within those categories or not, the Court will construe Defendant's motion at ECF No. 102 as generally requesting "all such rough notes" "taken during the course of the investigation and/or after the indictment was returned in this case."  (ECF No. 102 at 1).  In light of this construction, the Court will grant Defendant's motion as to only those rough notes that the Government is already obligated to retain.[2]

---

[2] The Court notes that, on November 8, 2022, the Government sent Defendant a set of supplemental materials including handwritten notes by Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent Mike Namey.  (ECF No. 107).  Although it is not clear from the record whether Special Agent Namey is the only law enforcement official whose rough notes would be relevant in this matter, Defendant's request for preservation of rough notes would be moot if Special Agent Namey's rough notes were the only relevant ones in this matter because the issue of whether such notes are discoverable would be mooted by the notes' production.

### d. Motion to Sever (ECF No. 104)

Lastly, the Court will deny Defendant's motion to sever, (ECF No. 104), because Defendant has failed to establish that his Sixth Amendment right to a speedy trial would be prejudiced if the Court did not grant this motion.

### i. Asserted Basis for Severance

Federal Rule of Civil Procedure 14 provides the district court with the authority to order severance in cases where there is a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993) (citing FED. R. CIV. P. 14). Defendants seeking a severance under Rule 14 bear a "heavy burden" and must demonstrate not only that the Court would abuse its discretion if it denied severance, "but also that the denial of severance would lead to clear and substantial prejudice resulting in a manifestly unfair trial." *United States v. Lore*, 430 F.3d 190, 205 (3d Cir. 2005) (internal citation omitted).

Although Defendant does not expressly state which basis for severance underlies his motion, his motion and supporting brief indicate that Defendant's main concern is that repeated continuances of trial have compromised his Sixth Amendment right to a speedy trial. In the motion itself, Defendant asserts that "any further delays due to his co-defendant's unavailability operate to prejudice him and deny his constitutionally guaranteed right to a speedy trial." (ECF No. 104 at 2). In his supporting brief, Defendant clarifies that Mr. Waulk's repeated continuances of trial have prejudiced him "in that his co-defendant has continued to delay the proceedings a number of times." (ECF No. 105 at 2). Defendant seems to be arguing that the delays have

prejudiced his right to a speedy trial, but not necessarily that these delays would prevent the jury from making a reliable judgment about guilt or innocence.

Furthermore, the right with which Defendant appears to be concerned is his Sixth Amendment right to a speedy trial, rather than his statutory rights under the Speedy Trial Act. Defendant does not invoke the Speedy Trial Act in either his motion or supporting brief, but he repeatedly invokes the constitutional right. (*See* ECF No. 105 at 2) (asserting that his "being tethered to his co-defendant . . . is adversely affecting his right to a speedy trial as guaranteed by the United States Constitution"); (*id.* at 2–3) (asserting that "any further delays due to his co-defendant's unavailability operate to prejudice him and deny his constitutionally guaranteed right to a speedy trial").

Therefore, the Court construes Defendant's motion as arguing that failure to sever Defendant from Mr. Waulk would prejudice his Sixth Amendment right to a speedy trial.

### ii. Application to Case

The Court finds that severance is not proper here because Defendant has failed to show that his Sixth Amendment right to a speedy trial would be compromised by his continued joinder to Mr. Waulk. The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. AMEND. VI. In *Barker v. Wingo*, 407 U.S. 514, 530–31 (1972), the United States Supreme Court set forth a four-factor test for examining alleged Sixth Amendment violations. "The inquiry focuses on: (1) the length of the delay before trial; (2) the reason for the delay and, specifically, whether the government or the defendant is more to blame; (3) the extent to which the defendant asserted his speedy trial right; and (4) the prejudice suffered by the defendant." *United States v. Velazquez,*

749 F.3d 161, 174 (3d Cir. 2014) (citing *Barker*, 407 U.S. at 530–33).  None of the four factors are either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial; rather, they are related factors and must be considered together with such other circumstances as may be relevant.  *Barker*, 407 U.S. at 533.

As explained below, the Court finds that each of the *Barker* factors weigh to various degrees against Defendant's assertion of his Sixth Amendment right to a speedy trial.

### 1.  Length of Delay

The first factor under the *Barker* test—the length of the delay—is a threshold issue in that, if the delay is relatively brief, then it is not necessary to consider the other *Barker* factors.  *Barker*, 407 U.S. at 530–31 ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.").[3]  In determining whether a defendant has met this threshold burden of demonstrating delay which is "presumptively prejudicial," the Supreme Court has noted that, "[d]epending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year[.]"  *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992).  However, the Supreme Court has also emphasized that, "as the term is used in this threshold context, 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it

---

[3] The first factor performs two functions under *Barker*, one that is necessary for finding a deprivation of the right to a speedy trial and one that is not.  A court "first decides whether the delay is long enough that it should trigger analysis of the other *Barker* factors . . . .  If it is, the length of the delay is *also separately* weighed in the court's analysis of the remaining factors."  *U.S. v. Claxton*, 766 F.3d 280, 294 (3d Cir. 2014) (emphasis added).  Although this "double enquiry[,]" *Doggett v. United States*, 505 U.S. 647, 652 (1992), can seem at first glance to conflict with the Supreme Court's characterization of the *Barker* factors as not being necessary conditions, *see Barker*, 407 U.S. at 533, the Court understands *Barker* as treating satisfaction of the first factor as necessary to trigger its four-factor analysis as a whole but not necessary to establish a constitutional deprivation when applied *within* the analysis.

simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Id.* *See also Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir. 1993) (finding a 14-month delay sufficient to trigger review of the remaining *Barker* factors).

Here, Defendant has been held in pretrial detention since January 13, 2021—a period of over two years. (*See* ECF No. 23). Although this length of time is not dispositive, it is sufficient to trigger further inquiry into the *Barker* speedy trial factors.

### 2. Reason for the Delay

The second factor, the reason for the delay, looks at the diligence with which the Government has pursued the case. *Velazquez*, 749 F.3d at 175. A speedy trial claim will fail if the Government has been "reasonab[ly] diligent," whereas relief is "virtually automatic" if the Government has acted in bad faith. *Id.* (quoting *Doggett*, 505 U.S. at 657). On the other hand, delay attributable to Defendant (including through the actions of defense counsel) may waive the speedy trial claim. *See Vermont v. Brillon*, 556 U.S. 81, 90 (2009).

The length of delay from the date of Defendant's arrest to the scheduled trial date—January 13, 2021, to May 22, 2023—is approximately twenty-eight months. However, as the Court details in footnote 1, *supra*, approximately fifteen months of this delay resulted from motions to continue trial that Defendant himself made. As for the remaining thirteen months, that delay was caused either by Mr. Waulk, (*see, e.g.*, ECF No. 92), or the COVID-19 pandemic. (*See* ECF No. 32) (citing Case No. 2:20-MC-394, ECF No. 19). None of the delay here was caused by the Government, let alone by any bad faith on the Government's part. *See Velazquez*, 749 F.3d at 175.

Because Defendant is far more at fault for the delays in this case than is the Government, the Court finds that this factor weighs heavily against a finding that Defendant's Sixth Amendment speedy trial right has been prejudiced by those delays.

### 3.  Assertion of the Right

The third factor, the defendant's assertion of the right, will weigh in Defendant's favor if he "vigorously pursued a speedy trial." *Hakeem*, 990 F.2d at 764.  It will not do so if Defendant has taken "other actions indicat[ing] that [he is] unwilling or unready to go to trial." *Id.*

This factor weighs against Defendant because he "delayed in asserting his right to a speedy trial." *Conroy v. Leone*, 316 F. App'x 140, 144 (3d Cir. 2009).  Although he was detained on January 13, 2021, it was not until nearly two years later—October 10, 2022—that Defendant expressly asserted this right in his motion to sever.  (*See* ECF No. 104).  The letter Defendant sent to the Court seeking "a more expeditions ending to this affair," was filed only a short time earlier on September 15, 2022.  (ECF No. 91).  Although failure to demand a speedy trial does not waive the right, *see Barker*, 407 U.S. at 528, the Court nonetheless views Defendant's numerous requests to continue trial as evidence that he was not "ready and willing to go to trial" earlier than mid-2022. *United States v. Dubose*, No. 20-CR-453-1-2-3, 2022 WL 1136730, at *7 (E.D. Pa. Apr. 18, 2022).

### 4.  Prejudice

The fourth factor is the prejudice of continued joinder to the defendant.  *Barker*, 407 U.S. at 532.  There are three types of prejudice that can result from delaying trial: (1) "oppressive pretrial incarceration[;]" (2) "anxiety and concern" suffered by the defendant; and (3) impairment of the defendant's defense.  *Id.*  The possibility of prejudice is not enough; the defendant must establish that the delay actually caused him prejudice.  *See Hakeem*, 990 F.2d at 760.  Of the three

types of prejudice, impairment of the accused's defense is the most serious, *Barker*, 407 U.S. at 532, because "[c]redit for time served can mitigate the prejudice from pretrial incarceration, and some level of anxiety is unavoidable in every criminal case." *Hakeem*, 990 F.2d at 762. Prejudice that affects the defendant's ability to defend himself, though, "skews the fairness of the entire system." *Barker*, 407 U.S. at 532.

Of the three types of prejudice listed above, the only one that Defendant has alleged is suffering from anxiety or concern. (*See* ECF No. 105 at 2) (noting that Defendant had "expressed his frustrations with the delays in this matter) (citing ECF No. 91); (*see also* ECF No. 91) (stating that he was "concerned and distressed . . . from the amount of time it is taking to conclude these proceedings"). However, "[v]ague allegations of anxiety are insufficient to state a cognizable claim." *Hakeem*, 990 F.2d at 762. Rather, Defendant must show that his anxiety extended beyond that which "is inevitable in a criminal case." *United States v. Dreyer*, 533 F.2d 112, 116 (3d Cir. 1976). In order to reach that level, Defendant must produce evidence of psychic injury. *See id.* at 115–16. Because Defendant has produced no such evidence, the Court finds that this final factor also weighs against him.

### 5.  Balancing of Factors

As the foregoing analysis establishes, only the length of delay weighs in Defendant's favor. Weighing against Defendant are his role in creating the delay, his failure to establish prejudice, and failure to promptly assert his speedy trial rights. Because the Barker factors weigh strongly against Defendant on balance, the Court finds that Defendant failed to demonstrate a "serious risk that a joint trial would compromise [his] specific trial right" to a speedy trial. *Zafiro*, 506 U.S. at 539. The Court will therefore deny Defendant's motion to sever.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 3:20-cr-31 |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| DERIK CAROTHERS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW, this _2ND_ day of March, 2023, for the reasons set forth in the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that Defendant's motion at ECF No. 102 is **GRANTED IN PART** as to the preservation of rough notes falling within the purview of *United States v. Vella*, 562 F.2d 275 (3d Cir. 1977), and *United States v. Ammar*, 714 F.2d 238 (3d Cir. 1983), and **DENIED IN PART** as to the preservation of rough notes that do not fall within those categories.

IT IS FURTHER ORDERED that Defendant's motions at ECF Nos. 96, 98, 100, and 104 are **DENIED WITHOUT PREJUDICE**.

BY THE COURT

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE