IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 3:20-cr-31-2 |
| | ) | |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| DERIK CAROTHERS, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

I. Introduction

Pending before the Court is Defendant Derik Carothers's ("Carothers") "Motion to Dismiss Count 4 of Indictment[,]" which charges Carothers with violating 18 U.S.C. § 922(g)(1). (ECF No. 149). Carothers argues that § 922(g)(1)—the statutory provision that criminalizes the possession of a firearm and ammunition by a convicted felon—is (1) unconstitutional as applied to him, (2) unconstitutional on its face, (3) unconstitutionally vague, and (4) rooted in an unduly expansive view of Congress's Commerce Clause power. (*Id.*). The Motion is fully briefed and ripe for disposition. (*See* ECF Nos. 149. 155, 156). For the following reasons, the Court **DENIES** Carothers's Motion at ECF No. 149.

II. Background

On December 1, 2020, a federal Grand Jury indicted Carothers and his then co-Defendant, Isiah Waulk ("Waulk"). (ECF No. 1). Count One of the Indictment charges Carothers and Waulk with conspiracy to distribute and possess with intent to distribute a quantity of cocaine base, in the form commonly known as crack, a Schedule II controlled substance. (*Id.* at 1); 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846. Count Two charges Carothers and Waulk with possession of a firearm

in furtherance of a drug trafficking crime. (ECF No. 1 at 2); 18 U.S.C. § 924(c)(1)(A)(i). At Counts Three and Four, Waulk and Carothers, respectively, are separately charged with possession of a firearm and ammunition by a convicted felon. (ECF No. 1 at 3–4); 18 U.S.C. § 922(g)(1).

Carothers and Waulk both had their initial appearances and arraignments before Magistrate Judge Keith A. Pesto ("Judge Pesto") on January 13, 2021. (ECF Nos. 21, 27). There, both pleaded not guilty to the charges against them in the Indictment. (ECF Nos. 22, 28).

As relevant to the pending Motion, Carothers filed several pretrial motions on October 10, 2022, including: (1) a "Motion to Dismiss Count One [of the Indictment] (Conspiracy)[,]" (ECF Nos. 96, 97), (2) a "Motion to Compel Government to Provide Defendant with Written Statement of Uncharged Misconduct Evidence and/or Federal Rule of Evidence 404(B) Evidence and for Pretrial Production of Such Evidence[,]" (ECF Nos. 98, 99), (3) a "Motion to Dismiss Count Two [of the Indictment] (924(c))[,]" (ECF Nos. 100, 101), (4) and a "Motion for Order of Court to Preserve Rough Notes[,]" (ECF Nos. 102, 103). Carothers also filed a "Motion to Sever" the same day. (ECF Nos. 104, 105).

The Government responded in opposition to each of Carothers's Motions on November 10, 2022. (ECF No. 108). The Court issued a Memorandum Opinion on March 2, 2023, addressing Carothers's Motions. (ECF No. 113). In that Opinion, the Court granted in part and denied in part Carothers's Motion for a Court Order to Preserve Rough Notes and denied the remainder of Carothers's Motions without prejudice. (*Id.*).

On September 12, 2023, Carothers filed a "Motion for Leave to File Supplemental Pretrial Motion Pursuant to *Bruen* and *Range*[,]" (ECF No. 142), which the Court granted the following day. (ECF No. 143). On October 3, 2023, Carothers filed his Motion to Dismiss Count 4 of the

Indictment. (ECF No. 149). The Government filed its Response in Opposition on November 3, 2023, (ECF No. 155), and Carothers filed a Reply to the Government's Response on November 14, 2023. (ECF No. 156).

Finally, on January 26, 2024, Carothers filed his second Motion to Sever. (ECF No. 167). The Government indicated to the Court that it was unopposed to the Motion at ECF No. 167, so the Court granted that Motion on April 5, 2024. (ECF No. 175). Accordingly, Carothers and Waulk are no longer joined as co-Defendants in this matter, and each Defendant is individually scheduled for trial. (*Id.*).

### III. Legal Standard

Carothers's Motion to Dismiss Count 4 of the Indictment is governed by Rule 12 of the Federal Rules of Criminal Procedure. That Rule allows a defendant to raise a defense "by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits[.]" Fed. R. Crim. P. 12(b)(3).

Carothers's argument that § 922(g)(2) is unconstitutional—both on its face and as applied to him—sounds in Rule 12(b)(3)'s defense of "a defect in the indictment[,]" including the "failure to state an offense[.]" *Id.* 12(b)(3)(B)(v); *United States v. Ho Ka Yung*, No. 17-CR-14, 2018 WL 619585, at *1 (D. Del. Jan. 30, 2018) ("An indictment is defective if it alleges [a] violation of an unconstitutional statute."); *United States v. Harrison*, No. 23-CR-129, 2023 WL 6795588, at *7 (W.D. Pa. Oct. 13, 2023) ("Under Rule 12, the Court can dismiss criminal charges in an indictment where there is an infirmity of law in the prosecution, such as an unconstitutional statute.").

"[T]he scope of a district court's review at the Rule 12 stage is limited." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012). "[A] pretrial motion to dismiss an indictment is not a permissible

vehicle for addressing the sufficiency of the government's evidence." *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000). And, relevant to the disposition of the pending Motion, "[i]n evaluating a Rule 12 motion to dismiss, a district court must accept as true the factual allegations set forth in the indictment." *Huet*, 665 F.3d at 595.

IV.  Discussion

    A.  Relevant Second Amendment Authority

Carothers challenges the constitutionality of § 922(g)(1), commonly referred to as the federal "felon-in-possession statute[.]" *Binderup v. AG of United States*, 836 F.3d 336, 380 (3d Cir. 2016). Section 922(g)(1) makes it "unlawful for any person . . . who has been convicted in any court . . . of a crime punishable by imprisonment for a term exceeding one year" to possess firearms or ammunition. 18 U.S.C. § 922(g)(1). The thrust of Carothers' contention is that § 922(g)(1) "runs afoul of the Second Amendment[.]" (ECF No. 149 at 2).

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment protects an individual's right to possess a firearm "unconnected with militia service." 554 U.S. 570, 582 (2008). The *Heller* Court emphasized that the right of "law-abiding, responsible citizens to use arms in defense of hearth and home" was at the "core" of the Second Amendment. *Id.* at 634–35. But *Heller* noted that an individual's Second Amendment right is "not unlimited." *Id.* at 626. "From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* As relevant here, "nothing in our opinion[,]" the *Heller*

Court explained, "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]" *Id.*

Two years after *Heller*, in *McDonald v. City of Chicago,* the Supreme Court held that the Fourteenth Amendment "incorporates the Second Amendment right recognized in *Heller*" because the right is "fundamental" to "our system of ordered liberty." 561 U.S. 742, 778 (2010). *McDonald* reiterated *Heller*'s "central holding" — "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." *Id.* at 780. The *McDonald* Court also "repeated" *Heller*'s "assurance" that the Court's Second Amendment jurisprudence casts no doubt on prohibitions on the possession of firearms by felons. *Id.* at 786.

One passage from *Heller* guided the Second Amendment analysis employed by circuit and district courts alike for over a decade. "Under any of the standards of scrutiny that we have applied to enumerated constitutional rights," *Heller* explained, the statute at issue in that case "would fail constitutional muster." 554 U.S. at 628–29. This excerpt led the Third Circuit, along with the vast majority of its sister courts, to apply a "means-end scrutiny analysis in Second Amendment cases." *Lara v. Comm'r Pa. State Police*, 91 F.4th 122, 128 (3d Cir. 2024) (citing, *inter alia, Halloway v. AG United States*, 948 F.3d 164, 172 (3d Cir. 2020); *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 128 (2d Cir. 2020); *United States v. McGinnis*, 956 F.3d 747, 754 (5th Cir. 2020)).

But the Supreme Court, in *New York State Rifle & Pistol Ass'n v. Bruen,* held that "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context." 142 S. Ct. 2111, 2127 (2022). Instead, those cases taught "that when the Second Amendment's plain

text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 2126. The Court explained:

> To justify its [firearm] regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

Adhering to this standard, *Bruen* held "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id.* at 2122. Mirroring *Heller* and *McDonald*, the Court emphasized that felon-in-possession prohibitions are "presumptively lawful[.]" *Id.* at 2162 (Kavanagh, J., concurring).

The Third Circuit recently applied *Bruen*'s historical analysis when addressing a constitutional challenge to § 922(g)(1) in *Range v. AG United States*, 69 F.4th 96 (3d Cir. 2023).[1] There, Bryan Range ("Mr. Range") claimed that § 922(g)(1) violated his Second Amendment right to keep and bear arms. *Id.* at 98. In 1995, Mr. Range pleaded guilty to one count of making a false statement to obtain food stamps in Pennsylvania state court. *Id.* Though Mr. Range was sentenced to only three years' probation, the Pennsylvania statute he violated was punishable by up to five years' imprisonment. *Id.* Because § 922(g)(1) therefore applied, Mr. Range was twice rejected while attempting to purchase a firearm. *Id.* at 98–99. He then sued, seeking a declaration that § 922(g)(1) violates the Second Amendment as applied to him and requesting an injunction prohibiting the law's enforcement against him. *Id.* at 99. Mr. Range asserted "that but for §

---

[1] "The Government maintains that *Range* . . . was wrongly decided and preserves all arguments in support of that position." (ECF No. 155 at 8).

922(g)(1), he would 'for sure' purchase a[] deer-hunting rifle and 'maybe a shotgun' for self-defense at home." *Id.*

The district court granted the Government's motion for summary judgment, holding that Mr. Range was constitutionally disarmed under § 922(g)(1). *Id.* Mr. Range appealed. *Id.* A Third Circuit panel, following the analysis set forth in *Bruen*, affirmed. *Id.* But Mr. Range petitioned for rehearing en banc, which the Third Circuit granted. *Id.* The en banc Third Circuit vacated the panel opinion, holding that because "the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights." *Id.* at 106.

"After *Bruen*," the court noted, "we must first decide whether the text of the Second Amendment applies to a person and his proposed conduct." *Id.* at 101. In undertaking that analysis, the court first rejected the Government's argument that the Second Amendment only protects "law-abiding, responsible citizens[.]" *Id.* Instead, relying on *Heller*, the court concluded that the Second Amendment right "presumptively 'belongs to all Americans[,]'" including Mr. Range, not "an unspecified subset[.]" *Id.* at 101–03 (quoting *Heller*, 554 U.S. at 580–81).

The court then turned to what it categorized as "the easy question: whether § 922(g)(1) regulates Second Amendment conduct." *Id.* at 103. "It does." *Id.* The court reasoned that Mr. Range's request to "possess a rifle to hunt and a shotgun to defend himself at home" tracked "the constitutional right as defined by *Heller*." *Id.* (citing *Heller*, 554 U.S. at 582).

"Because [Mr.] Range and his proposed conduct are protected by the Second Amendment," the court turned to "whether the Government has justified applying § 922(g)(1) to [Mr.] Range 'by demonstrating that it is consistent with the Nation's historical tradition of firearm

-7-

regulation.'" *Id.* The court highlighted that "[h]istorical tradition can be established by analogical reasoning, which 'requires only that the government identify a well-established and representative historical *analogue,* not a historical *twin.*'" *Id.* (quoting *Bruen*, 142 S. Ct. at 2133) (emphasis in original). The court ultimately held that the Government failed to carry its burden. *Id.*

The en banc Third Circuit rejected the Government's argument that legislatures traditionally used status-based restrictions to disarm certain groups of people, holding that such restrictions did "nothing to prove that [Mr.] Range is part of a similar group today." *Id.* at 104–05. The court also found the Government's argument that "Founding-era government punished some nonviolent crimes with death" unpersuasive, reasoning that "[F]ounding era governments' execution of some individuals convicted of certain offenses does not mean the State, then or now, could constitutionally strip a felon of his right to possess arms if he was not executed." *Id.* At bottom, the court concluded that the Government failed to show "that the Nation's historical tradition of firearms regulation supports depriving [Mr.] Range of his Second Amendment right to possess a firearm." *Id.*

But the Third Circuit emphasized that its holding *Range* was "a narrow one[,]" limited to the constitutionality of § 922(g)(1) "only as applied to [Mr. Range] given his violation" of Pennsylvania law by misrepresenting his income on an application for food stamps. *Id.* at 106. In his concurring opinion, Judge Ambro clarified that "the Government's failure to carry its burden in this case does not spell doom for § 922(g)(1)[,]" as the statute remains "'presumptively lawful'" under *Bruen*. *Id.* at 109 (citing *Bruen*, 142 S. Ct. at 2162). Judge Ambro explained that § 922(g)(1) "fits within our Nation's history and tradition of disarming those persons who legislatures

believed would, if armed, pose a threat to the orderly functioning of society." *Id.* at 110. "That [Mr.] Range does not conceivably pose such a threat says nothing about those who do." *Id.*

### B. Section 922(g)(1) Is Constitutional as Applied to Carothers

The Court begins by providing Count IV of the Indictment, which sits at the heart of the pending Motion. That Count reads, in full:

> On or about October 20, 2019, in the Western District of Pennsylvania, the defendant, DERIK CAROTHERS, a/k/a DC, knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, namely, on or about November 7, 2013, in the Cambria County (Pennsylvania) Court of Common Pleas, at Docket Number 613-2012, of the crimes of burglary and carrying a firearm without a license, and on or about March 20, 2017, in the Cambria County (Pennsylvania) Court of Common Pleas, at Docket Number 1176-2015, of the crime of carrying a firearm without a license, did knowingly possess, in and affecting interstate commerce, the following firearms and ammunition:
>
> > a. Colt Model Official Police .38 caliber revolver (serial number 916406);
> >
> > b. Ruger Model AR-556, 5.56 caliber rifle (serial number 85577838);
> >
> > c. Glock Model 22 .40 caliber handgun (serial number obliterated, later chemically restored to SWN 825); and
> >
> > d. approximately 8 rounds of ammunition.
>
> In violation of Title 18, United States Code, Section 922(g)(1).

(ECF No. 1 at 4).

Carothers's as-applied constitutional challenge to the § 922(g)(1) offense at Count IV, in contrast to his facial challenge, which the Court will address separately, "does not contend that [§ 922(g)(1)] is unconstitutional as written but that its application to [Carothers] under particular circumstances deprived [him] of a constitutional right." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010).

Carothers argues that the Government "will not be able to identify any tradition of firearm regulation similar to [§] 922(g)(1)'s application to" him. (ECF No. 149 at 6). In light of the fact that *Range* "carefully considered and rejected all the historical evidence that has been relied on by the [G]overnment in other post-*Bruen* litigation to date[,]" Carothers contends that "unless the government can come forward with new historical evidence of an as-of-yet undiscovered tradition of disarming 'people like [Mr. Carothers],' [§] 922(g)(1) cannot be constitutionally applied" to him. (*Id.*) (quoting *Range*, 69 F.4th at 106).

The Government counters that "an as-applied challenger must show 'that the acts of his that are the subject of the litigation fall outside what a properly drawn prohibition could cover'— a burden the Government argues Carothers has failed to carry. (ECF No. 155 at 5) (quoting *Board of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 482 (1989)). Specifically, the Government avers that Carothers "had no Second Amendment right to possess firearms for an unlawful purpose, such as furthering drug trafficking." (*Id.* at 12). Moreover, the Government contends that § 922(g)(1)'s application to Carothers "is consistent with the Second Amendment based on the historical test outline in *Bruen*." (*Id.*).

### 1. Carothers's Conduct Is Not Protected by the Second Amendment

Relying on *Bruen* and *Range* as its north stars, the Court must "first decide whether the text of the Second Amendment applies to [Carothers] and his proposed conduct." *Range*, 69 F.4th at 101. Here, the Government concedes that, under *Range*, Carothers is part of "the people" within the meaning of the Second Amendment. (ECF No. 155 at 12). But the Government argues that Carothers has failed to "show that the Second Amendment protects his specific conduct." (*Id.*). The Court agrees.

*Range* requires the Court to determine not only whether the Second Amendment applies to Carothers himself, but also whether it applies to his "conduct."[2] *Range*, 69 F.4th at 101; *see also Heller*, 554 U.S. at 626 (explaining that the Second Amendment does not provide "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose").

This, of course, was an "easy" question in *Range*. Mr. Range's proposed conduct was possessing a rifle to hunt and a shotgun to defendant himself at home. *Id.* at 103. But Carothers's constitutional challenge to § 922(g)(1), unlike *Range*, does not come by way of a civil suit seeking declaratory and injunctive relief with respect to proposed future conduct. Instead, Carothers challenges the constitutionality of § 922(g)(1) as he is currently charged with violating that law in a four-Count Indictment. Thus, Carothers's "actual conduct is the focus for analysis[.]" *United States v. McBroom*, No. 21-CR-97, 2023 WL 7221400, at *9 (W.D. Pa. Nov. 2, 2023). And the Court must take all factual allegations in the Indictment as true at this Rule 12 stage. *Huet*, 665 F.3d at 595.

On that score, Count II of the Indictment alleges that Carothers "knowingly and unlawfully possess[ed] firearms in furtherance of a drug trafficking crime[,]" contrary to 18 U.S.C. § 924(c)(1)(A)(i). (ECF No. 1 at 2). That drug trafficking crime is charged at Count I of the

---

[2] Accordingly, Carothers's argument that because he is a member of "the people" protected by the Second Amendment, the Government "therefore bears the burden to establish a robust tradition of founding-era firearm regulations sufficiently similar to Section 922(g)(1)" is incorrect. (ECF No. 149 at 4) Carothers's argument that the Constitution presumptively protects his conduct because "the conduct prohibited by Section 922(g)(1)—possession of a firearm—falls squarely within the heartland of the Second Amendment" is similarly misguided. (*Id.* at 5). *Range*'s conclusion that the Second Amendment protected Mr. Range's conduct was rooted in the court's conclusion that Mr. "Range's request—to possess a rifle to hunt and a shotgun to defend himself at home—tracks the constitutional right as defined by *Heller*." *Range*, 69 F.4th at 103. This makes the obvious clear: a court must consider the specific conduct at issue when determining whether that conduct warrants Second Amendment protection.

Indictment: conspiracy to distribute and possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of cocaine base. (*Id.* at 1); 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846.

As a sister district court aptly noted, where a "defendant is also charged with violating § 924(c), which implicates facts that [the] defendant possessed firearms while drug trafficking," those "facts cannot be divorced from the analysis of § 922(g)(1)[.]" *United States v. Adams*, No. 23-CR-122, 2024 WL 54112, at *15–16 (M.D. Pa. Jan. 4, 2024). As the Third Circuit explained, "*Bruen* further supports the conclusion that possession of a firearm in furtherance of a drug crime is not covered by the text of the Second Amendment." *United States v. Cash*, No. 22-2713, 2023 WL 6532644, at *6 (3d Cir. Oct. 6, 2023).

Indeed, courts around the country have routinely held that possessing a firearm in furtherance of a drug trafficking crime does not constitute conduct protected by the Second Amendment. *See, e.g., United States v. Napolitan*, 762 F.3d 297, 311 (3d Cir. 2014) ("Needless to say, while the Second Amendment secures 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home,' it does not entitle a drug trafficker to carry a firearm in furtherance of his criminal exploits[.]") (quoting *Heller*, 554 U.S. at 570) (internal citation omitted); *United States v. Potter*, 630 F.3d 1260, 1261 (9th Cir. 2011) ("[I]t cannot seriously be contended that the Second Amendment guarantees a right to use a firearm *in furtherance of drug trafficking*.") (emphasis in original); *United States v. Bryant*, 711 F.3d 364, 369–70 (2d Cir. 2013).

Thus, while Carothers may be among "the people" protected by the Second Amendment, his conduct at issue in the present case—possessing a firearm in furtherance of a drug trafficking crime—falls firmly outside the ambit of the "conduct" to which the Second Amendment's

protection applies. *Range*, 69 F.4th at 101.³ Accordingly, Carothers's as-applied challenge to § 922(g)(1) fails on that basis alone. *See Adams*, 2024 WL 54112, at *18 (rejecting the defendant's as-applied challenge to § 922(g)(1) where the defendant was charged in the same indictment with violating § 924(c) because "the Second Amendment does not apply to the proposed use of firearms for criminal exploits, such as possessing firearms in furtherance of trafficking drugs").

> 2. **Even Assuming Carothers's Conduct Is Protected, the Government Has Carried Its Burden**

Even assuming that Carothers's conduct is protected by the Second Amendment, the Court finds that the Government has carried its burden of showing that "our Republic has a longstanding history and tradition of depriving people like [Carothers] of their firearms[.]" *Range*, 69 F.4th at 106. *Bruen* provides that historical tradition can be established by analogical reasoning. 142 S. Ct. at 2133. "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry." *Id.* (internal quotations omitted). Because "analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check[,]" the Government must only "identify a well-established and representative historical *analogue*, not a historical *twin*." 142 S. Ct. at 2133 (emphasis in original).

---

³ Even if the Court were limited to analyzing Carothers's "proposed conduct," as the Third Circuit did in *Range*, Carothers has made no argument in his briefing regarding what his proposed conduct—in the absence of § 922(g)(1)'s application to him—would be. (*See generally* ECF Nos. 149, 156).

As Count IV of the Indictment articulates, the prior offenses forming the basis for charging Carothers with violating § 922(g)(1) are one conviction of burglary[4] and two convictions of carrying a firearm without a license. (ECF No. 1 at 4). The Government argues that disarming an individual on the basis of those convictions—as opposed to the far milder conviction at issue in *Range*—finds a historical analogue in Founding-era laws that disarmed individuals deemed to pose a potential danger to others. (ECF No. 155 at 19).

For example, the Government notes that the Second Amendment "'codified a right inherited from our English ancestors[,]'" (*Id.*) (quoting *Heller*, 554 U.S. at 599), and points to a 17th-century English statute that "empowered the government to 'seize all arms in the custody or possession of any person' who was 'judge[d] dangerous to the Peace of the Kingdom.'" (*Id.*) (quoting Militia Act 1662, 13 & 14 Car. 2, c. 3, § 13). The use of this statute, the Government argues, "'continued unabated' after the adoption of the 1689 English Bill of Rights, which expressly guaranteed the right to keep and bear arms." (*Id.*) (quoting Diarmuid F. O'Scannlain, *Glorious Revolution to American Revolution: The English Origin of the Right to Keep and Bear Arms*, 95 Notre Dame L. Rev. 397, 405 (2019)).

The Government also provides several Founding-era colonial laws that "categorically disarmed entire groups deemed dangerous or untrustworthy[.]" (*Id.*) (citing Act of May 1, 1776, ch. 21, § 1, 1776 Mass. Acts 479; Act of June 13, 1777, ch. 21, § 4, 1777 Pa. Laws 63; Act of May 28,

---

[4] The Court notes that both parties, in their briefing, state that Carothers was previously convicted of "conspiracy to commit burglary[,]" (ECF No. 149 at 2, 3; ECF No. 155 at 2, 12), while the Indictment states that Carothers was convicted "of the crime[] of burglary[.]" (ECF No. 1 at 4). Although the Court must take the factual averments in the Indictment as true at this stage, the Court notes that whether Carothers was convicted of burglary or conspiracy to commit burglary does not change any of the Court's conclusions. *See* 18 Pa. Cons. Stat. § 905(a) (explaining that "solicitation and conspiracy are crimes of the same grade and degree as the most serious offense which is attempted or solicited or is an object of the conspiracy").

1777, ch. 3 (Va.), reprinted in 9 William Waller Hening, The Statutes at Large; Being a Collection of all the Laws of Virginia from the First Session of the Legislature, in the Year 1619, at 281–83 (1821)). The Government likewise points to Founding-era laws that "called for case-by-case judgments about dangerousness" and "disarmed individuals who had demonstrated their dangerousness by engaging in particular types of conduct, such as carrying arms in a manner that spreads fear or terror among the people." (*Id.* at 19–20) (citing Act for Constituting a Council of Safety, ch. 40, § 20, 1777 N.J. Laws 90; Act for the Punishing of Criminal Offenders, 1692 Mass. Laws 11–12; Act for the Punishing [of] Criminal Offenders, 1696–1701 N.H. Laws 15).[5]

With the Government's historical analogues identified, the Court turns to whether § 922(g)(1) "impose[s] a comparable burden on the right of armed self-defense and whether that burden is comparably justified" as applied to Carothers. 142 S. Ct. at 2133; *see also Range*, 69 F.4th at 103 ("*Bruen* offers two metrics that make historical and modern firearms regulations similar enough: 'how and why the regulations burden a law-abiding citizen's right to armed self-defense.'") (quoting *Bruen*, 142 S. Ct. at 2133).

The "how" of § 922(g)(1) prohibits individuals, like Carothers, who have been convicted of burglary (or conspiracy to commit burglary) and twice possessing a firearm without a license, "from possessing firearms because such individuals have demonstrated that they cannot be trusted to obey the law, and they pose a threat to the orderly functioning of society." *United States v. Wise*, No. 21-CR-511, 2023 WL 6260038, at *16 (W.D. Pa. Sept. 26, 2023). And the "why" of §

---

[5] The Court notes that the Government, in its brief, also offers proposals made in state ratifying conventions and post-ratification laws and practice as historical analogues to § 922(g)(1)'s application to Carothers. (ECF No. 155 at 20–21).

922(g)(1) is to "protect the public from [the] violence and disorder" posed by individuals with prior convictions like Carothers possessing a firearm. *Id.*

The Court finds that these "how and why" metrics at the center of *Bruen*'s historical analysis, as applied to Carothers and his prior convictions, are distinctly similar to the Founding-era firearms regulations identified by the Government, which share a "common theme" of "disarming individuals who lawmakers deemed to be dangerous or disruptive to society and protecting the public from disorder and danger." *Id.* at *15. At bottom, Carothers's three previous convictions differ significantly from the singular misdemeanor conviction at issue in *Range*. As Judge Ambro explained, that Mr. Range did "not conceivably pose" a "threat to the orderly functioning of society" says "nothing about those[,]" like Carothers, "who do." *Range*, 69 F.4th at 110 (Ambro, J., concurring).

Thus, even assuming that Carothers's conduct at issue is protected by the Second Amendment, the Government has satisfied its burden of "demonstrating that" § 922(g)(1)'s application to Carothers "is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130; *see, e.g., United States v. Cotton*, No. 22-CR-471, 2023 WL 6465836, at *9–12 (E.D. Pa. Oct. 3, 2023) (finding that § 922(g)(1) was constitutionally applied to a defendant previously convicted of unlawful firearm possession and burglary, relying upon Founding-era laws identical to those offered as historical analogues by the Government in the present case); *United States v. Wright*, No. 23-CR-336, 2023 WL 823725, at *6–7 (E.D. Pa. Nov. 27, 2023) (rejecting an as-applied challenge to § 922(g)(1) on the basis of similar Founding-era analogues where the defendant had multiple prior convictions for, *inter alia*, illegally possessing

a firearm); *United States v. Smith*, No. 23-CR-129-22, 2024 WL 896772, at *4–6 (W.D. Pa. Mar. 1, 2024). Carothers's as-applied constitutional challenge therefore fails.

C.   Section 922(g)(1) Is Facially Constitutional

Carothers also argues that "a faithful application of *Bruen* and *Range* compels the conclusion that [§] 922(g)(1) is unconstitutional on its face." (ECF No. 149 at 6). "Because there is no [F]ounding-era history of disarming people convicted of felonies at all," Carothers contends, § 922(g)(1) "'is unconstitutional in all of its applications.'" (*Id.* at 7) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008)). The Government responds that Carothers's facial challenge must fail "because he has not met his burden of showing that § 922(g)(1) violates the Second Amendment in *all* applications." (ECF No. 155 at 28).

"A party asserting a facial challenge 'must establish that no set of circumstances exists under which the [challenged law] would be valid.'" *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (quoting *Washington State Grange*, 552 U.S. at 449). Carothers is unable to make such a showing here.

For starters, as the Court just found, Carothers has failed to show that § 922(g)(1) is unconstitutional as applied to him, foreclosing any finding that § 922(g)(1) is violative of the Second Amendment in all applications, whatever the circumstances. Carothers's facial challenge also runs headlong into *Heller*, *McDonald*, and *Bruen*, all of which indicated that felon-in-possession laws like § 922(g)(1) comport with the Second Amendment. 554 U.S. at 582; 561 U.S. at 786; 142 S. Ct. at 2162; *see also Range*, 69 F.4th at 110 (Ambro, J., concurring) (explaining that § 922(g)(1) "remains 'presumptively lawful'") (quoting *Bruen*, 142 S. Ct. at 2162).

Indeed, "nearly every opinion in this circuit addressing this issue after *Range* has held that § 922(g)(1) is constitutional both on its face and as applied[,]" which "undermines any attempt by [Carothers] to show that § 922(g)(1) is unconstitutional in every application." *United States v. Hedgepeth*, No. 22-CR-377, 2023 WL 7167138, at *8 & n.5 (E.D. Pa. Oct. 31, 2023) (collecting cases). Because Carothers is unable to show § 922(g)(1)'s unconstitutionality in all applications, his facial challenge fails.

D.   **Section 922(g)(1) Is Not Unconstitutionally Vague**

Carothers's void-for-vagueness challenge meets the same fate. By Carothers's telling, after *Range*, "there is no way for an individual to know, in advance of indictment and conviction, whether" his or her conduct violates § 922(g)(1)'s mandate. (ECF No. 149 at 7). The Government counters that § 922(g)(1) "provides fair notice of what is prohibited, and the vagueness doctrine does not apply when a constitutional provision may provide a potential defense to an otherwise clear statute[.]" (ECF No. 155 at 29).

A criminal statute is impermissibly vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). Section 922(g)(1)'s plain text, however, is clear. It prohibits any person "who has been convicted in any court" of "a crime punishable by imprisonment for a term exceeding one year" from "possess[ing] in or affecting commerce, any firearm or ammunition[.]" 18 U.S.C. § 922(g)(1); *see also United States v. Harrison*, No. 23-CR-129, 2023 WL 6795588, at *20–21 (W.D. Pa. Oct. 13, 2023) (explaining that an individual "can easily determine whether he [or she] is covered by [§ 922(g)(1)] by examining

his [or her] prior criminal convictions, and the statutory maximum prison terms for the crimes of conviction").

Because § 922(g)(1) is sufficiently clear, the fact that "the Second Amendment might then constitutionally preclude punishment in certain instances" does not alter the Court's conclusion. *United States v. Ladson*, No. 23-CR-161-1, 2023 WL 6810095, at *13–14 (E.D. Pa. Oct. 16, 2023). Carothers's argument that § 922(g)(1) is unconstitutionally vague is meritless.

### E. Carothers's Commerce Clause Argument Is Foreclosed by Precedent

Finally, as Carothers recognizes,[6] his argument that § 922(g)(1) "is inconsistent with the original public meaning of the Constitution's Commerce Clause" is squarely foreclosed by precedent. (ECF No. 149 at 9). *See United States v. Singletary*, 268 F.3d 196, 204 (3d Cir. 2001).

### V. Conclusion

In sum, each of Carothers's constitutional challenges to § 922(g)(1) fail. Carothers's conduct at issue in the present case is not protected by the Second Amendment, and even if it were, the Government has carried its burden of showing that disarming individuals like Carothers comports with our Nation's history and tradition surrounding firearm regulation. Carothers's facial challenges to § 922(g)(1) are likewise insufficient. The Court will therefore deny Carothers's Motion to Dismiss Count 4 of the Indictment.

An appropriate Order follows.

---

[6] Carothers asserts his Commerce Clause based argument "for preservation purposes[.]" (ECF No. 149 at 9).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 3:20-cr-31-2 |
| | ) | |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| DERIK CAROTHERS, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

**AND NOW**, to wit, this 22ⁿᵈ day of April, 2024, for the reasons espoused in the accompanying Memorandum Opinion, it is **HEREBY ORDERED** that Defendant Derik Carothers's "Motion to Dismiss Count 4 of Indictment[,]" (ECF No. 149), is **DENIED**.

BY THE COURT:

_____
**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**

-20-