IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | CRIMINAL NO. 3:20-31-2 |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| DERIK CAROTHERS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

I. Introduction

Before the Court is Defendant Derik Carothers's ("Mr. Carothers") Motion to Suppress Cell Phone Evidence (the "Motion"). (ECF No. 254). Mr. Carothers seeks to suppress evidence found as the result of law enforcement executing two warrants, each issued for a cell phone. Mr. Carothers asserts that the warrants were legally deficient because the magistrate judge lacked probable cause to issue them, and thus the Court should exclude the fruits of the cell phone searches. The Government contests the Motion. The present issue is fully briefed (ECF Nos. 254, 256, 260) and ripe for disposition. For the following reasons, the Court **DENIES** the Motion.

II. Background

a. General Background

On October 20, 2019, Pennsylvania State Police ("PSP") troopers attempted to stop Mr. Carothers while he was driving a vehicle down State Route 28. (ECF No. 256-2 at 5).[1] Mr. Carothers's former co-defendant, Isiaha Waulk ("Mr. Waulk"), was a passenger in the car. (Id.).[2] Following a high-speed pursuit and crash, PSP troopers arrested Messrs. Carothers and Waulk.

---

[1] Both the page and paragraph numbers in ECF No. 256-2 are not sequentially numbered. Thus, the Court uses the page numbers as marked by ECF when citing ECF No. 256-2.
[2] Additionally, a minor female was a passenger in the car.

(*Id.*). Upon the PSP troopers' extrication of the vehicle's occupants, the troopers found one firearm outside the car. (ECF No. 256-1 at 2). The PSP troopers then recovered 1.1 grams of crack cocaine packaged for street sale, a digital scale, a firearm, and $290 in U.S. currency from Mr. Waulk when he was crawling out of the vehicle. (ECF No. 256-2 at 5–6). The PSP subsequently seized the vehicle. (*Id.* at 6).

On October 25, 2019, a magistrate judge of the Pennsylvania Court of Common Pleas for Butler County authorized a search warrant for the vehicle. (ECF No. 256-1). Upon that warrant's execution, PSP troopers found a ballistic vest, face masks, two Glock handguns that were reported as stolen (one having an obliterated serial number), an AR-15-style rifle, high-capacity firearm magazines, rifle and handgun ammunition, and the two at-issue cell phones. (ECF No. 256-2 at 8).

b. The Cell-Phone Warrant

On November 5, 2020, Magistrate Judge Keith A. Pesto (the "Magistrate Judge") of the United States District Court for the Western District of Pennsylvania authorized two Warrants by Telephone or Other Reliable Electronic Means for the two recovered cell phones (the "Warrant").[3] (*See* ECF Nos. 256-2–4). Special Agent Michael Namey ("Agent Namey") of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (the "ATF") was the Affiant to the Warrant. In his

---

[3] The Court mirrors the parties' language, identifying them as a single warrant because the substance of the two warrants is identical, sans the identification number of the cell phones. (*Compare* ECF No. 256-2, *with* ECF No. 256-3).

two Affidavits in Support of Application for a Search Warrant for a Cellular Phone (the "Affidavit"),[4] Agent Namey provided the following facts, which are pertinent to his experience:

1. I am currently a Special Agent with the [ATF] and have been so employed since 2015. As a Special Agent[,] ... I am responsible for investigating violations of federal law. I received intensive ATF training lasting approximately 4 months that included the investigation of federal firearms and drug laws. I have worked on multiple federal cases involving firearms and/or illegal drugs since becoming an ATF Special Agent. Prior to becoming an ATF Special Agent, I was employed as a Deputy United States Marshal with the United States Marshal Service (USMS). I began that position in 2008. In order to obtain that position, I received intensive training, lasting approximately 4 months, in law enforcement, security[,] and fugitive apprehension. This training included significant information regarding firearms and drug matters. (ECF No. 256-2 at 3–4).

2. As an ATF [S]pecial [A]gent, I have been involved in narcotics and firearm related arrests and the execution of search warrants that resulted in the seizure of narcotics and firearms. I have been involved in investigations that included the use of informants who provided information and assistance resulting in arrests for drug trafficking and federal firearm crimes. Through my involvement in these narcotics investigations, I have handled cooperating sources of information who were involved in narcotics acquisition and/or trafficking. Additionally, I have reviewed thousands of communications between drug traffickers through review of cell phones seized pursuant to drug investigations. I have had hundreds of conversations with drug traffickers, drug users, and other members of law enforcement regarding the methods and language used by drug traffickers to smuggle, store, and distribute drugs and to collect and launder drug distribution proceeds. (*Id.* at 4).

Under the Affidavit's section titled, Identification of the Devices to be Examined, Agent Namey stated:

1. I am aware that criminals often take trophy photographs and videos using their cellular telephones of their drugs, firearms, proceeds, [and] related criminal activity and retain them on their cellular telephones. I am also aware that such criminals, like law-abiding citizens, will take photographs and videos using their cellular telephones of themselves with their friends,

---

[4] The Court mirrors the parties' language, identifying them as a single affidavit because the substance of the two affidavits is identical. (*Compare* ECF No. 256-2, *with* ECF No. 256-4).

relatives, and associates and keep them on their cellular telephones. When they are taken or retained by criminals, such photographs and videos can be evidence, and can lead to additional evidence, of illegal activity by identifying the perpetrators, contraband, and people who are actively assisting and/or supporting the criminal activity, as well as the locations where they live or where they store their contraband, firearms, proceeds, or paraphernalia. (*Id.* at 7).

Under the Affidavit's section titled, Facts and Circumstances Supporting Probable Cause, Agent Namey provided facts regarding Mr. Carothers's arrest:

1. On October 20, 2019, at approximately 8:45 P.M., [PSP] Troopers attempted to stop a vehicle on [S]tate [R]oute 28 in Armstrong County, Pennsylvania. When the troopers activated their lights and sirens, the vehicle fled at a high rate of speed. During the high[-]speed pursuit, the vehicle exited the highway and crashed getting on an exit ramp. Troopers arrived at the crash scene and located three individuals inside the vehicle later identified as [Mr. Waulk, Mr. Carothers, and a minor female]. As [Mr. Waulk] was crawling out of the vehicle, officers retrieved a loaded Glock handgun, a quantity of crack cocaine[,] and [a] digital scale from his person. Following the pursuit, officers learned that both [Mr. Carothers] and [Mr. Waulk] were wanted on [b]ench [w]arrants and were convicted felons[,] prohibiting them from possessing firearms and[/]or ammunition. Both suspects were charged via complaint and were detained on the state bench warrants. Laboratory tests by the [PSP] forensic crime lab confirmed that the substance seized from [Mr. Waulk] was indeed crack cocaine. (*Id.* at 7–8).

2. On October 23, 2019, PSP Troopers obtained a state search warrant for the vehicle occupied by [Mr. Carothers] and [Mr. Waulk]. During the execution of the [state] [s]earch [w]arrant[,] the following items were located and seized from inside the vehicle:

    [a.] Ballistic Vest
    [b.] Face Masks
    [c.] Two Black TCL cellular phones (7660500040-1, 766050200040-2)
    [d.] [Two] stolen [G]lock handguns, one of which had an obliterated serial number
    [e.] AR-15[-]style rifle
    [f.] high[-]capacity firearm magazines
    [g.] Rifle and Handgun ammunition (*Id.* at 8).

3. Subsequent to the arrest of [Mr. Carothers] and [Mr. Waulk], your Affiant initiated a [f]ederal investigation into the illegal possession of the aforementioned firearms, ammunition, ballistic body armor, and crack cocaine. The criminal violations under investigation include [18 U.S.C. §] 922(9)(1) (Felon in Possession of a Firearm); [18 U.S.C. §] 922(K) (Possession of a Firearm with an Obliterated Serial Number); [18 U.S.C. §] § 931 (Possession of Body Armor by Violent Felons); [21 U.S.C. §] 841(a)(1) (Possession with the Intent to Distribute an Amount of a Controlled Substance); and [18 U.S.C. §] 924(c) (Possession of a Firearm in Furtherance of a Drug Trafficking Crime). (ECF No. 256-2 at 8).

4. I am aware that essentially no mass-manufactured firearms or ammunition are made wholly within Pennsylvania. Therefore, essentially all firearms and ammunition have an interstate nexus. In this case, an ATF nexus expert reviewed the material on the firearms and opined that they were possessed in or affecting interstate commerce. (*Id.* at 9).

5. Based upon my experience, your [A]ffiant has probable cause to believe that the devices recovered from the vehicle will contain standard cell phone features and data, including incoming and outgoing call history, incoming and outgoing text messages, and stored contact information. (*Id.*).

6. The call history, contacts, photographs and other stored information will help to show whether the phones were being used in connection with felony offenses such as drug possession, drug dealing, firearms possession, or firearms trafficking. A review of the cell phone's contents will also provide indicators (for example text messages with, photos of, and contacts to family members of [Mr. Carothers] and [Mr. Waulk]) that help confirm them as the user of the cell phone. In my experience, the sale of narcotics is nearly always carried out through the use of cell phones and often serves as the narcotics dealer's primary means of communicating with customers and suppliers. It has been my experience that drug customers will call, IM[,] and text both sellers and buyers in order to arrange for the purchase of narcotics. It has been my experience that such call data and text messages will remain stored in phones for days and often much longer before it is deleted by the phone's possessor. Even deleted items can often be recovered from a cell[ ]phone during a search. (*Id.*).

7. In my experience, it is very common for criminals to photograph themselves, and often their associates, in possession of drugs, firearms, currency, and other contraband. It has also been my experience that cell phones are frequently used to take such photographs because cell phones are often carried on one's person at all times, unlike actual cameras. Further, it has been my experience

5

that such photographs are frequently sent from cell phones to social media sites (such as Facebook or Twitter)[,] as well as from cell phone to cell phone via text messages and electronic mail. For these reasons, your [A]ffiant believes that the devices recovered in the vehicle occupied by [Mr. Carothers] and [Mr. Waulk] will probably contain photographs and communications about the theft and possession of firearms and illegal narcotics. (*Id.* at 9–10).

Attachment B to the Warrant provided the scope of the cell phone search to include:

1. incoming and outgoing call and text message logs
2. contact lists
3. photo and video galleries
4. sent and received text messages
5. online searches and sites viewed via the internet
6. online or electronic communications sent and received, including email, chat, and instant messages
7. sent and received audio files
8. navigation, mapping, and GPS files
9. telephone settings, including speed dial numbers and the telephone number for the subject telephone and related identifying information such as the ESN for the telephone
10. call forwarding information
11. messages drafted but not sent
12. voice messages
13. application data (*Id.* at 12).

   c. **Procedural Background**

Following the execution of the Warrant, on December 1, 2020, a Federal Grand Jury indicted Messrs. Carothers and Waulk (ECF No. 1). Count I of the Indictment charges them both with conspiracy to distribute and possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack, a Schedule II controlled substance. (*Id.* at 1); 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846. Count II charges Messrs. Carothers and Waulk with possession of firearms in furtherance of a drug trafficking crime, namely the offense at Count I of the Indictment. (ECF No. 1 at 2); 18 U.S.C. § 924(c)(1)(A)(i). Finally, Count IV charges Mr. Carothers with possession of firearms and

ammunition by a convicted felon, listing three prior convictions. (ECF No. 1 at 4); 18 U.S.C. § 922(g)(1).

On January 26, 2024, Mr. Carothers filed a Motion to Sever the Indictment such that his trial and Mr. Waulk's trial would occur separately. (ECF No. 167). The Court granted that motion on April 5, 2024. (ECF No. 175).[5] Thereafter, Mr. Waulk filed a motion to suppress evidence. (ECF No. 221). Subsequent to Mr. Waulk's suppression motion, Mr. Carothers filed the Motion presently before the Court. (ECF No. 254).[6]

In support of his Motion, Mr. Carothers makes two principal arguments. First, the "[W]arrant was not supported by probable cause because [Agent Namey] did not show any 'nexus' between the cell phones and a crime." (*Id.* at 3). Second, "[t]he 'good faith' exception does not apply because the [W]arrant was wholly lacking in facts establishing a nexus between seized cell phones and the crimes police had cause to investigate." (*Id.* at 12). In opposition, the Government argues (i) the Warrant was based upon probable cause, and (ii) even if it was not, the good faith exception applies. (*See generally* ECF No. 256).

---

[5] On August 7, 2024, the Court denied the Government's Motion to Re-Consolidate Mr. Carothers's and Mr. Waulk's cases for trial, stating that the two "Defendants shall remain severed for trial." (ECF No. 236 at 1).

[6] According to Mr. Carothers, the argument that Mr. Waulk raised in his motion—which challenges the validity of the Warrant—"applies to Mr. Carothers." (ECF No. 254 at 1). Mr. Carothers therefore seeks to "join in and adopt that portion of Mr. Waulk's pending motion[.]" (*Id.*). However, because the Court severed the two defendants, the Court will treat the suppression motions separately. Nonetheless, the Court has considered Mr. Waulk's arguments in the context of Mr. Carothers's Motion and deems them unavailing.

Moreover, both the Government and Mr. Carothers have stated that no suppression hearing is necessary for the decision presently before the Court. (*See* ECF No. 254 at 15; ECF No. 256 at 9).

III.   Analysis

The Court will begin with an overview of the Fourth Amendment and jurisprudence related to warrants and searches of cell phones. Then, after a discussion of the applicable standard of review, the Court will consider (i) whether the Magistrate Judge's decision satisfies that standard, and, if not, (ii) whether the good faith exception applies.

a.   **The Fourth Amendment**

The Fourth Amendment to the United States Constitution protects citizens from unreasonable governmental searches and seizures. It provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and *no Warrants shall issue, but upon probable cause*, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV (emphasis added). "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Probable cause "is not a high bar[;] [i]t requires only the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act." *Kaley v. United States*, 571 U.S. 320, 338 (2014) (last alteration in original) (internal quotations omitted) (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)). Further, "a finding of 'probable cause' may rest upon evidence [that] is not legally competent in a criminal trial." *United States v. Ventresca*, 380 U.S. 102, 107 (1965).

The government triggers the protections of the Fourth Amendment when it invades an area where a person has a "constitutionally protected reasonable expectation of privacy." *New York v. Class*, 475 U.S. 106, 112 (1986) (citing *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan,

8

J., concurring)). Under the Fourth Amendment, persons have a protected reasonable expectation of privacy to the content of their cell phones, and thus the Supreme Court has held that police must get a warrant before searching a cell phone seized incident to an arrest. *Riley v. California*, 573 U.S. 373, 403 (2014) ("Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is ... simple[:] get a warrant."); *see also id.* at 402 ("Our holding, of course, is not that the information on a cell phone is immune from search; it is instead that a warrant is generally required before such a search, even when a cell phone is seized incident to arrest.").

Accordingly, magistrate judges must issue such warrants only based upon probable cause. In determining whether probable cause exists, the magistrate judge who issues the warrant must consider the totality of the circumstances and make a "practical, common-sense decision." *Gates*, 462 U.S. at 238.

### b. Standard of Review

"When faced with a challenge to a magistrate's probable cause determination, a reviewing court must remember that its role is limited." *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993). The reviewing court must conduct "a deferential review of the initial probable cause determination made by the magistrate judge." *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010). "Of course, such deference 'does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions.'" *Jones*, 994 F.2d at 1055 (quoting *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983)). But the deference does mean that "doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Gates*, 462 U.S. at 237 n.10 (quoting *Ventresca*, 380 U.S. at 109).

In sum, "[t]he role of a reviewing court is not to decide probable cause *de novo*, but to determine whether 'the magistrate had a substantial basis for concluding that probable cause existed.'" *Stearn*, 597 F.3d at 554 (quoting *Gates*, 462 U.S. at 238–39); *compare id.* at 564–66 (holding that a warrant to search the defendant's home for contraband provided the magistrate judge with a substantial basis for concluding that probable cause existed because, *inter alia*, the warrant's affidavit provided evidence that the defendant was a drug dealer, ample evidence that the address listed was the defendant's home address, and a credible informant told the police that the defendant sold drugs from his house), *with United States v. Zimmerman*, 277 F.3d 426, 432 (3d Cir. 2002) (holding that a warrant to search the defendant's home for child pornography failed to provide the magistrate judge with a substantial basis for concluding that probable cause existed because "the government conceded" that "there was no probable cause to search [the defendant's] home for child pornography" and "the affidavit contained no information that [the defendant] had ever purchased or possessed child pornography").

Pursuant to this standard, the reviewing court must limit its consideration to the facts in front of the magistrate judge—i.e., the Court will not consider material from outside the Warrant and Affidavit. Therefore, here, the question is whether the Affidavit recited sufficient facts to provide the Magistrate Judge with a substantial basis upon which to find probable cause.

c. **The Magistrate Judge Had a Substantial Basis upon Which to Find Probable Cause.**

Mr. Carothers argues that the facts in the Affidavit for the Warrant are insufficient to give rise to probable cause. The Court, however, holds that the Affidavit presented sufficient facts to provide the Magistrate Judge with a substantial basis for his finding that probable cause existed.

Specifically, Mr. Carothers argues that the Warrant lacked probable cause because Agent Namey did not show any "nexus" between the cell phones and a crime. (ECF No. 254 at 3). According to Mr. Carothers, (i) "the [W]arrant lacked probable cause that Mr. Carothers was engaged in criminal activity[,]" and (ii) "even if the [W]arrant had established probable cause of criminal activity, there were no facts in the [W]arrant tying that suspected activity to the seized cell phones." (*Id.*).

In response, the Government contends that the Affidavit recites sufficient facts to support a finding of probable cause because the Affidavit lists the "extensive training and experience of [Agent Namey] and explains why those engaged in drug trafficking and federal firearm crimes[] ... would likely have communication and evidence on cell phones relating to such offenses." (ECF No. 256 at 5). Further, the Government reasons that the Affidavit "lays out the events that led to [Mr. Carothers's] arrest." (*Id.* at 6).

The Government thus argues that Agent Namey's experience in conjunction with his explanation provided the Magistrate Judge with "a substantial basis to conclude that there was a fair probability that contraband or evidence of present or past criminal activity would be recovered on the cell phones." (*Id.* at 5). Mr. Carothers disagrees, arguing that Agent Namey's statements are "generalizations" and "unfalsifiable, conclusory assertions," which cannot provide a sufficient nexus between Mr. Carothers's alleged crimes and the cell phones. (ECF No. 254 at 5; *see also* ECF No. 260 at 2 (arguing that "[Agent Namey's] generic 'experience' of finding evidence in cell phones did not establish a nexus between the cell phones and a crime here")).

On balance, the Court agrees with the Government's position. The Affidavit recites Agent Namey's extensive experience and training in both narcotics and firearm investigations. (ECF

11

No. 256-2 at 3–4, 7). Here, narcotics and firearm crimes are the crimes that state and federal agencies had cause to investigate. (*Id.* at 8). In the Affidavit, Agent Namey also explains how persons engaged in narcotics and firearm crimes use cell phones in a way that places evidence of such crimes on the cell phones. (*Id.* at 4, 7, 9–10). Accordingly, Agent Namey's experience and explanation provide a substantial basis to conclude that evidence of Mr. Carothers's alleged crimes would be discovered on the cell phones. *See United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) ("The issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense."); *see also United States v. Carey*, No. 3:CR-18-037, 2020 WL 59607, at *2 (M.D. Pa. Jan. 6, 2020) (finding a nexus between the defendant's cell phones and his alleged drug trafficking when "the affiant[, a police corporal,] indicated, 'individuals associated with the distribution of drugs often utilize multiple cellular telephones and/or frequently change their telephone numbers in an effort to conceal their criminal activities,' and such individuals 'often use cellular communications ... to arrange drug transactions,' as well as to 'take pictures of their drugs and/or money obtained from the sale of drugs'"); *United States v. Johnson*, No. 2:17-CR-00243, 2019 WL 5288015, at *13 (W.D. Pa. Oct. 18, 2019) ("In conjunction with [the police-detective affiant's] stated experience that cell phones are often used in narcotics crimes, the Court concludes that the issuing judge had a substantial basis to conclude that evidence of the alleged crimes would be discovered on the cell phones, fulfilling the probable cause requirement.").

Furthermore, the Affidavit provided the facts regarding Mr. Carothers's arrest. Contrary to the Government's position, Mr. Carothers argues that these facts do not indicate "that any drugs, drug paraphernalia, or firearms were found on Mr. Carothers." (ECF No. 254 at 9). From the Affidavit, however, the Magistrate Judge could draw reasonable inferences linking the recovered contraband to Mr. Carothers. For example, the PSP troopers recovered *two* cell phones, *two* reportedly stolen Glock handguns, firearm magazines, and ski masks from the vehicle search, all of which evince more than one suspect of criminal activity. (ECF No. 256-2 at 8); *see United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) ("[P]robable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide the fruits of his crime." (citations and internal quotations omitted)).

Additionally, although the cocaine was found on Mr. Waulk's person, Mr. Carothers attempted to evade the police; thus, the Magistrate Judge could reasonably infer that Mr. Carothers knew about the contraband present in the car he was driving. *Cf. Maryland v. Pringle*, 540 U.S. 366, 372 (2003) (holding that, in the context of probable cause for arrest, it is "an entirely reasonable inference ... that any or all three of the occupants [of a vehicle] had knowledge of, and exercised dominion and control over, the cocaine," when the cocaine was "behind the back-seat armrest and accessible to all three men"). Finally, as Mr. Carothers recognizes, the Affidavit specified that he had an outstanding bench warrant and had previously been convicted of a felony offense. (ECF No. 254 at 9); *see United States v. Conley*, 4 F.3d 1200, 1207 (3d Cir. 1993) ("The use of prior arrests and convictions to aid in establishing probable cause is not only permissible[] but is often helpful. This is especially so where[] ... the previous arrest or conviction involves a crime

13

of the same general nature as the one which the warrant is seeking to uncover."). Therefore, in addition to Agent Namey's experience and explanation, the Affidavit's discussion of the facts regarding Mr. Carothers's arrest further provided the Magistrate Judge with a substantial basis for a finding of probable cause.

"[T]he whole is often greater than the sum of its parts—especially when the parts are viewed in isolation." *D.C. v. Wesby*, 583 U.S. 48, 60–61 (2018). Here, the Affidavit's recitation of the totality of the circumstances, as outlined above, provided a substantial basis for the Magistrate Judge to have determined that there was a fair probability that evidence of Mr. Carothers's alleged crimes would be found on the cell phones. Thus, this Court cannot say that, based on the Affidavit, the Magistrate Judge lacked a substantial basis upon which to find probable cause. Accordingly, the Court will **DENY** Mr. Carothers's Motion.[7]

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** Mr. Carothers's Motion to Suppress Cell Phone Evidence (ECF No. 254) in full. An appropriate Order follows.

---

[7] Considering the Court's holding that the Magistrate Judge had a substantial basis upon which to find probable cause, the Court need not address the issue of whether the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984), applies to the cell phone evidence. In *Leon*, the Supreme Court stated that evidence seized in good faith, in reliance on a facially valid warrant, will not be suppressed. *Id.* at 918–22. The Third Circuit has enumerated four instances where the exception does not apply: (1) when the magistrate judge issues the warrant in reliance on a deliberately or recklessly false affidavit; (2) when the magistrate abandons his or her neutrality; (3) when the affidavit is so deficient as to render belief in its validity entirely unreasonable; and (4) when the warrant was so facially deficient that it failed to particularize the place to be searched or things to be seized. *See Hodge*, 246 F.3d at 308. The Court does note, however, that, here, none of those circumstances are satisfied and notwithstanding the Court's conclusion, the good faith exception would apply. *See United States v. Brewer*, No. 1:13-CR-13-03, 2015 WL 2250150, at *5 (M.D. Pa. May 12, 2015) (concluding that the magistrate judge's determination of probable cause was reasonable—in light of evidence in the warrant's affidavit that connected the defendant to a robbery and the fact that the defendant claimed ownership of the cell phone—despite the lack of a direct nexus between the alleged crime of robbery and the cell phone), *aff'd*, 708 F. App'x 96 (3d Cir. 2017).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CRIMINAL NO. 3:20-31-2 |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| DERIK CAROTHERS, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

AND NOW, this 8th day of October, 2024, upon consideration of Defendant Derik Carothers's Motion to Suppress Cell Phone Evidence (ECF No. 254) and in accordance with the foregoing Memorandum Opinion, **IT IS HEREBY ORDERED** that Defendant's Motion is **DENIED**.

BY THE COURT:

_____
**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**

15