## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA )
)
        v. )
)
DERIK CAROTHERS, )
)
        Defendant. )

    CRIMINAL NO. 3:20-31-2

    JUDGE KIM R. GIBSON

### MEMORANDUM OPINION

I.    **Introduction**

With Defendant Derik Carothers's ("Mr. Carothers") trial in the above-captioned case approaching, currently pending before the Court are the following Motions in Limine:

1. The Government's Motion in Limine and Notice of Intent to Present Evidence Pursuant to F.R.E. 404(b) (ECF No. 268),

2. Mr. Carothers's Motion to Exclude Improper Expert Testimony of Special Agent Karen Springmeyer and Request for Hearing Under Federal Rule of Evidence 702 (ECF No. 269),

3. Mr. Carothers's Motion in Limine to Preclude Special Agent Springmeyer from Offering Expert Opinions Beyond Those That Have Been Disclosed by the Government Under FRCP 16(a)(1)(G) (ECF No. 272),

4. Mr. Carothers's Motion in Limine to Exclude Evidence of Police Pursuit and Accident and the Entire Dash Camera Video or, in the Alternative, to Mute Sound and Only Show Relevant Clips of the Video to the Jury (ECF No. 274),

5. Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Bro Conversation" (ECF No. 275),

6.  Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Jakr Conversation" (ECF No. 276),

7.  Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Shelly Conversation" (ECF No. 277),

8.  Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Stresd Conversation" (ECF No. 278),

9.  Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL1 - Tone Conversation" (ECF No. 279),

10. Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Wiz Conversation" (ECF No. 280), and

11. Mr. Carothers's Motion in Limine to Exclude Expert Testimony of ATF Special Agent Daniel Duffalo About Locations Where Firearms and Ammunition Were Manufactured (ECF No. 284).[1]

The parties have filed their respective Responses to the foregoing Motions. (ECF Nos. 297–99). The time for filing responses has passed, (*see* ECF No. 249 at 5) and the Motions are ripe for disposition.

---

[1] The Court addressed the following six additional Motions in Limine under the separate Memorandum Opinion at ECF No. 312: (i) Mr. Carothers's Motion in Limine to Exclude Evidence that Mr. Carothers Was on State Parole at the Time of His Alleged Offenses (ECF No. 270), (ii) Mr. Carothers's Motion in Limine to Exclude Evidence of Isiaha Waulk's Wanted Status at the Time of Mr. Carothers's Arrest (ECF No. 271), (iii) Mr. Carothers's Motion in Limine to Exclude Gun Evidence at Trial Phase I (ECF No. 273), (iv) Mr. Carothers's Motion in Limine to Preclude Government and Government Witnesses from Referring to Scale as a "Drug Scale" (ECF No. 281), (v) Mr. Carothers's Motion in Limine to Prohibit Reference to Mr. Carothers as a "Felon" at Trial and When Charging the Jury (ECF No. 282), and (vi) Mr. Carothers's Motion in Limine to Exclude Evidence of Face Masks and Body Armor Recovered from Car Accident Scene (ECF No. 283).

For the reasons set forth below, the Court:

1. **GRANTS IN PART** and **DENIES IN PART** the Government's Motion in Limine and Notice of Intent to Present Evidence Pursuant to F.R.E. 404(b) (ECF No. 268);

2. **DENIES** Mr. Carothers's Motion to Exclude Improper Expert Testimony of Special Agent Karen Springmeyer and Request for Hearing Under Federal Rule of Evidence 702 (ECF No. 269);[2]

3. **DENIES** Mr. Carothers's Motion in Limine to Preclude Special Agent Springmeyer from Offering Expert Opinions Beyond Those That Have Been Disclosed by the Government Under FRCP 16(a)(1)(G) (ECF No. 272);

4. **GRANTS IN PART** and **DENIES IN PART** Mr. Carothers's Motion in Limine to Exclude Evidence of Police Pursuit and Accident and the Entire Dash Camera Video or, in the Alternative, to Mute Sound and Only Show Relevant Clips of the Video to the Jury (ECF No. 274);

5. **CONDITIONALLY DENIES IN PART** and **GRANTS IN PART** Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Bro Conversation" (ECF No. 275);

6. **GRANTS** Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Jakr Conversation" (ECF No. 276);

---

[2] The Court notes that it did grant Mr. Carothers's request for a hearing.  But for all other intents and purposes, the Court denies the Motion.

7. **GRANTS** Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Shelly Conversation" (ECF No. 277);

8. **DENIES IN PART** and **GRANTS IN PART** Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Stresd Conversation" (ECF No. 278);

9. **DENIES AS MOOT** Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL1 - Tone Conversation" (ECF No. 279);

10. **DENIES AS MOOT** Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Wiz Conversation" (ECF No. 280); and

11. **DENIES** Mr. Carothers's Motion in Limine to Exclude Expert Testimony of ATF Special Agent Daniel Duffalo About Locations Where Firearms and Ammunition Were Manufactured (ECF No. 284).

## II.    Background

### a.    General Background[3]

On October 20, 2019, Pennsylvania State Police ("PSP") troopers attempted to stop Mr. Carothers while he was driving a vehicle down State Route 28.  (ECF No. 256-2 at 5).  Mr. Carothers's former co-defendant, Isiaha Waulk ("Mr. Waulk"), was a passenger in the car.  (*Id.*).[4]

---

[3] The Court sets forth the General Background Section using the information from the Memorandum Opinion at ECF No. 285, which regards Mr. Carothers's Motion to Suppress Cell Phone Evidence.  The Court sets forth the information to color the analysis only; it does not adopt any disputed averments.

[4] Additionally, a minor female was a passenger in the car.

Following a high-speed pursuit and crash, PSP troopers arrested Messrs. Carothers and Waulk. (*Id.*).  Upon the PSP troopers' extrication of the vehicle's occupants, the troopers found one firearm outside the car.  (ECF No. 256-1 at 2).  The PSP troopers then recovered 1.1 grams of crack cocaine packaged for street sale, a digital scale, a firearm, and $290 in U.S. currency from Mr. Waulk when he was crawling out of the vehicle.  (ECF No. 256-2 at 5–6).  The PSP subsequently seized the vehicle.  (*Id.* at 6).

On October 25, 2019, a magistrate judge of the Pennsylvania Court of Common Pleas for Butler County authorized a search warrant for the vehicle.  (ECF No. 256-1).  Upon that warrant's execution, PSP troopers found a ballistic vest, face masks, two Glock handguns that were reported as stolen (one having an obliterated serial number), an AR-15-style rifle, high-capacity firearm magazines, rifle and handgun ammunition, and two cell phones.  (ECF No. 256-2 at 8).  On November 5, 2020, Magistrate Judge Keith A. Pesto of the United States District Court for the Western District of Pennsylvania authorized two Warrants by Telephone or Other Reliable Electronic Means for the two recovered cell phones.  (ECF Nos. 256 at 2–4).  Pursuant to those Warrants, the Government recovered evidence such as incoming and outgoing call and text message logs, photo and video galleries, and more.  (ECF No. 256-2 at 12).

### b. Procedural Background

On December 1, 2020, a Federal Grand Jury indicted Messrs. Carothers and Waulk.  (ECF No. 1).  Count I of the Indictment charges them both with conspiracy to distribute and possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack, a Schedule II controlled substance.  (*Id.* at 1); 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846.  Count II charges Messrs. Carothers and Waulk with

possession of firearms in furtherance of a drug trafficking crime, namely the offense at Count I of the Indictment. (ECF No. 1 at 2); 18 U.S.C. § 924(c)(1)(A)(i). Finally, Count IV charges Mr. Carothers with possession of firearms and ammunition by a convicted felon, listing three prior convictions. (ECF No. 1 at 4); 18 U.S.C. § 922(g)(1).

On January 26, 2024, Mr. Carothers filed a Motion to Sever the Indictment such that his trial and Mr. Waulk's trial would occur separately. (ECF No. 167). The Court granted that motion on April 5, 2024. (ECF No. 175). Further, on August 7, 2024, the Court denied the Government's Motion to Re-Consolidate Mr. Carothers's and Mr. Waulk's cases for trial, stating that the two "Defendants shall remain severed for trial." (ECF No. 236 at 1).

On August 23, 2024, pursuant to its authority under Federal Rule of Criminal Procedure 14(a), the Court *sua sponte* bifurcated Mr. Carothers's trial. (ECF No. 243). The Court will conduct Mr. Carothers's trial such that, in Phase One ("Phase I") of the trial, the jury will determine whether Mr. Carothers is innocent or guilty with respect to the offense at Count One ("Count I") of the Indictment. After the jury reaches its conclusion regarding that offense, the Court will conduct Phase Two ("Phase II") of the trial. During Phase II, the jury will determine whether Mr. Carothers is innocent or guilty of the offenses charged at Count Two ("Count II") and Count Four ("Count IV") of the Indictment. (*Id.* at 1).

## III. Analysis

The Court addresses the Motions in Limine in the following order: (a) the Government's and Mr. Carothers's Motions regarding the PSP trooper's dashboard-mounted Mobile Video Recorder ("MVR") video (ECF Nos. 268, 274), (b) Mr. Carothers's Motions regarding FBI Special Agent Karen Springmeyer ("Agent Springmeyer") (ECF Nos. 269, 272), (c) Mr. Carothers's

Motion regarding ATF Special Agent Daniel Duffalo ("Agent Duffalo") (ECF No. 284), and (d) Mr. Carothers's Motions regarding the exclusion of text-message conversations (ECF Nos. 275–80).

### a. The MVR Video

The attempted traffic stop, high-speed chase, crash, extraction of Mr. Carothers (and the other two vehicle occupants), and the seizure of certain evidence was captured on a PSP trooper's MVR. (ECF No. 268 at 3; *see* ECF No. 274 at 1–2). With its Motion in Limine, the Government "is seek[ing] a pretrial ruling regarding the admissibility of the full MVR video at both Phase I and Phase II of [Mr.] Carothers's bifurcated trial." (ECF No. 268 at 3). The Government's Motion also serves as a Notice of Intent to Present Evidence Pursuant to F.R.E. 404(b). (*Id.* at 1).[5] Conversely, Mr. Carothers is seeking to exclude the MVR video in its entirety pursuant to Federal Rules of Evidence 401, 402, 403, 404(b), 801, and 802. (ECF No. 274 at 1).

Specifically, the Government argues that "(1) the high[-]speed chase—from the time the trooper activated his emergency lights to when [Mr.] Carothers crashed into the jersey barrier—constitutes intrinsic evidence as to the crimes charged or, alternatively, 404(b) evidence offered to prove flight as consciousness of guilt; and (2) the portions of the video depicting the extraction of [Mr.] Carothers, [Mr.] Waulk, and the [minor] from the [vehicle], and the seizure of two

---

[5] Federal Rule of Evidence 404(b)(3) states:

> (3) Notice in a Criminal Case. In a criminal case, the prosecutor must:
>> (A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
>> (B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and
>> (C) do so in writing before trial — or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

firearms, magazines, and drug evidence constitute relevant, intrinsic (non-propensity) evidence offered to prove Carothers's guilt of the three crimes charged[,] and any hearsay statements captured by the MVR audio fall squarely within exceptions to the hearsay rule, i.e., excited utterance, present sense impression, [and] then[-]existing mental state." (ECF No. 268 at 3).

Mr. Carothers argues that the MVR "video is irrelevant, unduly prejudicial, and improper character evidence at Phase I of Mr. Carothers's trial." (ECF No. 274 at 4). He further argues that, although the MVR video is "technically *relevant* to the gun possession charges that will be decided in Phase II," the video "is cumulative of other evidence and unduly prejudicial at Phase II." (*Id.* at 7). Mr. Carothers also objects to the audio of the MVR video on grounds of hearsay and the Confrontation Clause of the Sixth Amendment. (*Id.* at 5, 7–8). The Court first examines the MVR video under Rule 404(b), second under Rules 401, 402, and 403, and third under Rules 801, 802, and 803 and the Confrontation Clause.

### 1. Character Evidence (Fed. R. Evid. 404(b))

Under Federal Rule of Evidence 404(b)(1), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, Rule 404(b)(2) provides that "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

"[T]he purpose of Rule 404(b) is 'simply to keep from the jury evidence that the defendant is prone to commit crimes or is otherwise a bad person, implying that the jury needn't worry overmuch about the strength of the government's evidence.'" *United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010) (quoting *United States v. Taylor*, 522 F.3d 731, 735 (7th Cir. 2008)). "The Rule

reflects the revered and longstanding policy that, under our system of justice, an accused is tried for *what* he did, not *who* he is." *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014).

"Extrinsic evidence must be analyzed under Rule 404(b); intrinsic evidence need not be." *Green*, 617 F.3d at 245. Extrinsic evidence is "evidence of acts that are not the basis of the current prosecution." *United States v. Davis*, 726 F.3d 434, 441 n.5 (3d Cir. 2013). By contrast, intrinsic evidence either (i) "directly proves the charged offense," *Green*, 617 F.3d at 245; *see, e.g., United States v. Northington*, No. 07-cr-550-05, 2013 WL 420296, at *4 (E.D. Pa. Feb. 4, 2013) (concluding that "the evidence of the circumstances surrounding [the d]efendant's arrest [wa]s intrinsic evidence[] … that directly prove[d] the charged RICO conspiracy offense" when, by example, the indictment charged the criminal conspiracy as using and carrying firearms, and at his arrest the "[d]efendant … had a loaded … handgun[.]"), or (ii) is an "act[] performed contemporaneously with the charged crime … if the [act] facilitate[s] the commission of the charged crime," *Green*, 617 F.3d at 245; *see, e.g., United States v. Gibbs*, 190 F.3d 188, 218 (3d Cir. 1999) (violence in furtherance of the conspiracy); *United States v. Krout*, 66 F.3d 1420, 1431 (5th Cir. 1995) (finding that the defendant's "fle[eing of] the scene and discard[ment of] nine packets of heroin and a handgun[]" was "admissible as an act 'part and parcel' of the [drug] conspiracy itself[,]" and thus admissible under 404(b)). To determine whether a Rule 404(b) analysis is warranted, the first question the Court must address is whether the MVR is extrinsic or intrinsic evidence.

### 2. All Admissible Portions of the MVR Video Constitutes Intrinsic Evidence

The Government argues that "[t]he entire MVR video[] … is intrinsic evidence as to *all* the offenses with which [Mr.] Carothers is charged." (ECF No. 268 at 8). Specifically, the Government reasons: "The pre-crash portion of the MVR video[] … was an act 'performed contemporaneously

with the charged crime[s]' and that facilitated them, and the post-crash portion of the MVR video is direct evidence offered to prove the elements of the offenses, e.g., possession of crack cocaine and drug paraphernalia (to prove the drug conspiracy), possession of the firearms and ammunition (to prove the [Sections] 924(c) and ... 922(g)(1) [charges])." (*Id.*) (citations omitted) (quoting *Green*, 617 F.3d at 248–49).

Conversely, Mr. Carothers argues that introducing any portion of the MVR video in Phase I would constitute "impermissible character evidence," implying that the MVR video is neither extrinsic nor intrinsic evidence of Count I. (ECF No. 274 at 5; *see id.* at 4–7). Mr. Carothers reasons that "[t]he only drug evidence ultimately recovered from the car accident was a single gram of crack cocaine, in a single baggy. The jury can be told that those items were recovered during Mr. Carothers's arrest without regaling them with an extended video of twisted metal, fire, constant screaming, [etc.]" (*Id.* at 4–5).[6] Mr. Carothers does not make an argument regarding 404(b) when it comes to the MVR video's introduction in Phase II. (*See generally id.*; ECF No. 298).

### i. Phase I

First, regarding Phase I and Count I, the Court holds that the MVR video—up until the crash (at approximately 04:07)—is intrinsic evidence of Count I because the MVR video displays footage of an act performed contemporaneously with the charged crime at Count I that facilitated the commission of that charged crime. The charged crime is conspiracy to distribute and possess with intent to distribute a controlled substance, 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846. (ECF No. 1

---

[6] Regarding his Phase-I argument, Mr. Carothers concludes, "[a]lternatively, if the Court does not exclude the [MVR] video from Phase I, it should permit the [G]overnment to play only the excerpt of the video, if any, that it alleges depicts the recover of the baggy of cocaine base—and it should require the [G]overnment to play that excerpt with all sound muted." (ECF No. 274 at 7).

at 1). Based on the Government's Indictment, the conspiracy was ongoing "[i]n and around October 2019," (*id.*), meaning the conspiracy occurred contemporaneously with Mr. Carothers's high-speed flight. Further, the flight facilitated the conspiracy; for example, if Mr. Carothers had successfully evaded the PSP, then the conspiracy could have continued. *See Gibbs*, 190 F.3d at 218; *Krout*, 66 F.3d at 1431.

All admissible portions of the post-crash video—from approximately 4:07 until the end, 48:48—also constitute intrinsic evidence because those portions directly prove the charged offense at Count I. "To establish a charge of conspiracy, the Government must show (1) a shared unity of purpose, (2) an intent to achieve a common illegal goal, and (3) an agreement to work toward that goal, which [the defendant] knowingly joined." *United States v. Boria*, 592 F.3d 476, 481 (3d Cir. 2010). These elements incorporate a requirement that, here, Mr. Carothers had knowledge of the specific illegal objective contemplated by the particular conspiracy, i.e., conspiracy to distribute and possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack. *See id.* Because the post-crash video shows the PSP's seizure of drugs, a scale, and firearms (i.e., tools of a drug conspiracy),[7] as well as Mr. Carothers and an alleged co-conspirator (Mr. Waulk) together, the post-crash video is direct evidence of the conspiracy crime charged.[8]

---

[7] "Weapons may be as much 'tools of [drug] trade' as the most commonly recognized narcotics paraphernalia." *United States v. Adams*, 759 F.2d 1099, 1108–09 (3d Cir. 1985) (quoting *United States v. Picklesimer*, 585 F.2d 1199, 1204 (3d Cir. 1978)).

[8] For the portions of the video pertaining to the time after the vehicle crashes, the Court finds that all portions the Court deems admissible clearly constitute direct evidence of the charged offense. For the remaining portions, such as where the MVR video only depicts the car smoking, the Court need not and does not need to find that those portions constitute direct evidence because those portions do not survive 403 balancing. *See* Section III.a.3., *infra*.

### ii. Phase II

Regarding Phase II and Counts II and IV, the pre-crash portion of the video is intrinsic evidence of the crimes because, again, Mr. Carothers performed acts contemporaneously with the charged crimes at Counts II and IV that facilitated the commission of the charged crimes. The charged crimes are (i) possession of firearms in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i), and (ii) possession of firearms and ammunition by a convicted felon, 18 U.S.C. § 922(g)(1). (ECF No. 1 at 2, 4). Based on the Government's Indictment, "[o]n or about October 20, 2019," the day of the high-speed chase, Mr. Carothers was allegedly possessing firearms both illegally and in furtherance of a drug conspiracy (i.e., the charged crimes occurred contemporaneously with the flight). Further, by fleeing, the flight facilitated the charged crimes by prolonging Mr. Carothers's possession of the firearms and evading the PSP's seizure of them.

The post-crash video is intrinsic evidence because it directly proves the charged offenses at Counts II and IV. First, the crime of possessing a firearm in furtherance of a drug trafficking crime, here, requires the Government to prove that (i) Mr. Carothers committed the crime at Count I of the Indictment, and (ii) that Mr. Carothers knowingly possessed a firearm in furtherance of that crime. *See United States v. Sparrow*, 371 F.3d 851, 852–53 (3d Cir. 2004).[9] Second, the crime of being a felon in possession of a firearm requires the Government to prove that (i) Mr. Carothers has been convicted of a felony; (ii) after that conviction, Mr. Carothers knowingly possessed a firearm; and (iii) Mr. Carothers's possession was in or affecting interstate or foreign

---

[9] With respect to the second element, the following factors bear on whether the possession of the firearm advanced or helped forward a drug trafficking crime: (1) the type of drug activity that is being conducted, (2) the accessibility of the firearm, (3) the type of the weapon, (4) whether the weapon is stolen, (5) the status of the possession (legitimate or illegal), (6) whether the gun is loaded, (7) proximity to drugs or drug profits, and (8) the time and circumstances under which the gun is found. *Sparrow*, 371 F.3d at 853.

commerce. *United States v. Adams*, 36 F.4th 137, 143–44 (3d Cir. 2022) (noting that, in *Rehaif v. United States*, 588 U.S. 225, 237 (2019), the Supreme Court held that a defendant must knowingly possess a firearm and also know that he "belong[s] to the relevant category of persons barred from possessing a firearm").

Because the post-crash video shows evidence directly related to the at-issue firearms—e.g., the PSP's discovery of the firearms, how the PSP recovered them, who in the PSP recovered them, and how the PSP secured them—the post-crash video is direct evidence of the firearm crimes charged.[10]  Overall, the MVR video is intrinsic evidence, and thus a Rule 404(b) analysis is not required.  Nevertheless, intrinsic evidence still must be relevant and satisfy Rules 401, 402, and 403.

### 3.   Relevancy and 403 Balancing (Fed. R. Evid. 401, 402, & 403)

Intrinsic evidence must be relevant under Federal Rules of Evidence 401 and 402, and its probative value must not be substantially outweighed "by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Regarding the application of these rules, "[t]he trial court has great discretion in determining the admissibility of evidence." *Kane v. Ford Motor Co.*, 450 F.2d 315, 316 (3d Cir. 1971); *see also Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 386 F. App'x 214, 218 (3d Cir. 2010) ("A district court is accorded [] wide discretion in determining the admissibility of evidence under the Federal Rules.  Assessing the probative value of [the proffered evidence], and weighing any factors counseling against

---

[10] *See* n.8, *supra*, and accompanying text.

admissibility, is a matter first for the district court's sound judgment under Rules 401 and 403 and ultimately, if the evidence is admitted, for the trier of fact." (quoting *United States v. Abel*, 469 U.S. 45, 54 (1984))).

For the reasons discussed above—namely *why* the MVR video is intrinsic evidence—the video satisfies the low bar of Rule 401. Nevertheless, the Court has reviewed the entirety of the 48-minute, 48-second MVR video and finds that much of the video provides evidence that is of little to no probative value. By way of one example, after 32:50, the MVR video plays footage of numerous firefighters, EMS, and other services observing the vehicle for the apparent purpose of towing it.[11] Accordingly, the probative value of playing the *entire* MVR video for the jury is substantially outweighed by the danger of undue delay and wasting time. Fed. R. Evid. 403. Additionally, other portions of the video, such as 04:08 to 6:00, display footage of the on-scene personnel attempting to extract the vehicle occupants while the minor female voices bloodcurdling screams. Any probative value that such footage provides—which is, again, little to none—is substantially outweighed by the danger of unfair prejudice (namely, inflaming the passion of the jury, and wanting to punish Mr. Carothers for the carelessness and result of the car crash rather than the crimes charged). *Id.*

Still, certain sections of the MVR video certainly are probative, and the following timestamps satisfy the 403-balancing test. The following timestamp portions are admissible to be played during Phase I of the trial and then referred to during Phase II[12]: (i) 00:00–04:07 (showing

---

[11] The Court notes that at 22:30 the audio cuts out; thus, the Court cannot know what the on-scene personnel is discussing.

[12] The Court determines that replaying the videos for the same jurors during Phase II would amount to needlessly presenting cumulative evidence. Indeed, the Government would simply get to present the same

the high-speed chase and crash); (ii) 06:20–07:00 (showing when the PSP found and secured the

first firearm); (iii) 10:15–12:45 (showing when the PSP placed the first firearm on the trooper car,

found the second firearm, and placed the second firearm on the car); (iv) 19:00–21:20 (showing

the PSP searching Messrs. Carothers and Waulk); (v) 24:45–28:10 (showing the PSP emptying a

firearm, taking a picture of that firearm, and packing up the firearms in evidence); and (vi) 32:35–

32:50 (showing a PSP trooper taking the boxed-up firearms off of the hood of the trooper car and

carrying a clear evidence bag).  Indeed, the Court deems each of these portions highly probative.

Although there is a risk of unfair prejudice in admitting these portions, their probative value is

not substantially outweighed by the danger of unfair prejudice.

### 4.  Hearsay and the Confrontation Clause (Fed. R. Evid. 801, 802, & 803; U.S. Const. Amend. VI)

Under Federal Rule of Evidence 802, "[h]earsay is not admissible unless any of the

following provides otherwise: [i] a federal statute; [ii] [the Federal Rules of Evidence]; or [iii] other

rules prescribed by the Supreme Court."  Hearsay is an out-of-court statement being used for the

truth of the matter asserted.  Fed. R. Evid. 801(c).  All the audio from the MVR video is hearsay

because all audible statements are out-of-court statements that the Government is seeking to use

for the truth of the matter asserted.  Thus, to be admissible, an exception must apply to the audio.

Under Federal Rule of Evidence 803, three Rules are relevant here:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
> (1) *Present Sense Impression.*  A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it.
> (2) *Excited Utterance.*  A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused.

---

evidence twice.  If the Government finds it necessary, it is permitted to display screenshots from the MVR video in Phase II.

> (3) *Then-Existing Mental, Emotional, or Physical Condition.* A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Fed. R. Evid. 803(1)–(3).

The statements of the minor female, Mr. Carothers, Mr. Waulk, and all other on-scene personnel fall into the exception of (i) present sense impression (e.g., the statements made by the PSP trooper pursuing Mr. Carothers's vehicle), (ii) excited utterance (e.g., the minor female's statements and the officer statements made when he found the first firearm), or (iii) then-existing mental, emotional, or physical condition (e.g., Mr. Carothers's statements when EMS is treating him). Thus, the audio of all persons *on-scene* is excepted hearsay.

However, the Court finds that the statements made over the radio, in response to the PSP trooper who was attempting to pull over Mr. Carothers, are inadmissible hearsay.

Turning to the Confrontation Clause, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004). "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. *Davis v. Washington*, 547 U.S. 813, 822 (2006) ("They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."); *see also Michigan v. Bryant*, 562 U.S. 344, 359

(2011) ("To determine whether the primary purpose of an interrogation is to enable police assistance to meet an ongoing emergency, which would render the resulting statements nontestimonial, we objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." (citations and quotations omitted)).

Here, the audio of the MVR video only plays up until approximately 22:30. The crash happened at approximately 04:07.[13] Thus, there are approximately 18 minutes of audio. During the 18 minutes of audio, the clear primary purpose of all persons audible is to address the ongoing emergency (i.e., the vehicle crash). Most of the audio is in response to reactions—e.g., the PSP trooper finding the first firearm—rather than in response to an interrogation, let alone a post-ongoing-emergency interrogation. Accordingly, the audio, at the timestamps discussed above, is the audio of non-testimonial statements, and thus they are admissible.

In sum, the Court will permit the Government to play the video and audio (of the on-scene personnel) from 00:00–04:07, 06:20–07:00, 10:15– 12:45, 19:00–21:20, 24:45–28:10, and 32:35–32:50 of the MVR video in Phase I of the trial. The Court will permit the Government to reference these portions of the MVR video during Phase II of the trial, but not replay the footage. All other portions of the MVR video are excluded for the aforementioned reasons.[14]

The Court therefore grants in part and denies in part the Government's Motion in Limine and Notice of Intent to Present Evidence Pursuant to F.R.E. 404(b) at ECF No. 268, and the Court

---

[13] It is the understanding of the Court that the PSP trooper who attempted to pullover Mr. Carothers will testify at Mr. Carothers's trial. Therefore, he will be present at Mr. Carothers's trial and available to be cross-examined. Accordingly, his MVR audio is admissible without a Confrontation Clause analysis.

[14] It is the responsibility of the Government to conform its presentation of the MVR video to the Court's determinations. Additionally, the Government must ensure that any identifying information of the minor female is inaudible.

grants in part and denies in part Mr. Carothers's Motion in Limine to Exclude Evidence of Police

Pursuit and Accident and the Entire Dash Camera Video or, in the Alternative, to Mute Sound

and Only Show Relevant Clips of the Video to the Jury at ECF No. 274.

  **b. Motions Regarding Agent Springmeyer**

The Government notified Mr. Carothers of its intent to offer Agent Springmeyer as an

expert "to present specialized testimony on drug trafficking and the use of firearms in furtherance

of drug trafficking." (ECF No. 269-1 at 1). Mr. Carothers filed two Motions in Limine regarding

Agent Springmeyer. First, Mr. Carothers filed a *"Daubert* Motion" arguing that "[t]he

[G]overnment has not, and cannot, demonstrate that Agent Springmeyer's testimony 'is the

product of reliable principles and methods,' nor that it is based on sufficient facts and data." (ECF

No. 269 at 7 (quoting Fed. R. Evid. 702(b), (c))). Mr. Carothers further argues that "in violation of

Rule 704(b), several of Agent Springmeyer's opinions embrace the ultimate issue and opine of

Mr. Carothers's mental state, which is an element of the charged crimes." (*Id.*). Mr. Carothers

requested a *"Daubert* Hearing" (*id.*), which the Court held on October 16, 2024. Second, Mr.

Carothers moved "to preclude the [G]overnment from eliciting expert opinions from [Agent

Springmeyer] other than those that have been disclosed by the [G]overnment as required by Fed.

R. Crim. P. 16(a)(1)(G)." (ECF No. 272 at 1). The Court first addresses the *Daubert* Motion.

  **1. The *Daubert* Motion**

Mr. Carothers argues that "Agent Springmeyer's testimony is unreliable and should be

excluded" for four reasons:

> First, many of Agent Springmeyer's conclusions should be excluded because they
> are unreliable. F. R. E. 702(c). … Second, Agent Springmeyer's opinion that drug
> traffickers possess firearms should be excluded because it is unsupported by data

or other reliable information. F. R. E. 702(b). Third, Agent Springmeyer should not be permitted to "interpret" the text messages identified by the government because her testimony is unreliable, conclusory and beyond the permissible scope of expert testimony. … Finally, many of Agent Springmeyer's opinions embrace the ultimate issue and opine on (or, more accurately, speculate about) Mr. Carothers's mental state in violation of Rule 704(b). F. R. E. 704(b).

(ECF No. 269 at 3).[15]

Conversely, the Government, argues that (i) "the existing record makes plain that each of Rule 702's conditions is satisfied," (ECF No. 297 at 5), and (ii) why Mr. Carothers's "contrary arguments fail," (*id.* at 9) (emphasis omitted).

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

---

[15] The first ellipse above marks the omission of the following: "Such testimony should also be excluded as substantially more prejudicial than probative. F. R. E. 403." (ECF No. 269 at 3). Mr. Carothers fails to develop his Rule 403 argument regarding Agent Springmeyer's testimony. The only other text in his Response on this score is as follows:

Finally, even if the Court finds that some or all of Agent Springmeyer's opinions about the items recovered from the vehicle are admissible under Rule 702, they should still be excluded as substantially more prejudicial than probative pursuant to FRE 403. Indeed, given the "prejudicial effect on the jury arising from the aura of special reliability and trustworthiness" of expert testimony, and the limited probative value of this testimony, its exclusion is warranted. *United States v. Downing*, 753 F.2d 1224, 1236 (3d Cir. 1985).

(*Id.* at 10). The Court finds this argument unavailing because Agent Springmeyer's testimony is highly relevant, and because the Court finds that she can offer expert testimony, the Court does not find the claim of *unfair* prejudice warranted.

The second ellipse above marks the omission of the following: "Additionally, such testimony should be excluded because it is irrelevant and improper propensity evidence. F. R. E. 401, 404(b)." Mr. Carothers specifically challenges Agent Springmeyer's interpretation of certain text messages allegedly sent between Mr. Carothers and Mr. Waulk (i.e., what the Government has termed the "Bro conversation"). The reasons set forth in Section III.d.2.iii., *infra*, apply to Mr. Carothers's argument here with equal force. Pursuant to those reasons, the Court finds Mr. Carothers's argument that Agent Springmeyer's testimony violates Rule 404(b) unavailing.

(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.[16]

"Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge[, i.e., reliability]; and (3) the expert's testimony must assist the trier of fact[, i.e., fit]." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010) (alterations in original) (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008)). In short, the expert must be (i) qualified and (ii) provide reliable testimony that (iii) fits the facts of the case. Mr. Carothers does not contest Agent Springmeyer's qualifications; rather, he contests the reliability and fitness of her testimony.

Regarding reliability, the Third Circuit "has previously recognized that law enforcement officials can rely upon their specialized knowledge or experience to offer expert testimony on various aspects of drug trafficking." *United States v. Walker*, 657 F.3d 160, 176 (3d Cir. 2011) (collecting cases); *see United States v. Perez*, 280 F.3d 318, 341 (3d Cir. 2002) (joining four circuit courts in "declar[ing] the *modus operandi* of drug trafficking as an appropriate or reliable field for expert opinion[.]"); *see also United States v. Holguin*, 51 F.4th 841, 855 (9th Cir. 2022) ("The government's experts[, including a DEA agent who was not involved in the case's investigation but had experience working on thousands of drug investigations,] generally testified based on

---

[16] At the *Daubert* Hearing, counsel for Mr. Carothers largely focused on the 2022 Amendment to Rule 702. That Amendment, however, "does not substantively alter Rule 702, but rather 'clarifies that the preponderance standard applies to the three [*Daubert*] requirements[.]'" *TAKTL, LLC v. IWR, N. Am., LLC*, No. 2:18-cv1546, 2024 WL 4415194, at *2 n.1 (W.D. Pa. Oct. 4, 2024) (quoting *S.Y. v. Roman Cath. Diocese of Paterson*, No. 20-cv-2605, 2024 WL 1231333, at *2 (D.N.J. Mar. 21, 2024)). Accordingly, the Court proceeds with its analysis under the relevant precedent from the years prior to 2022.

their experience rather than based on any systematic methodology. That by itself does not undermine the reliability of their testimony."), *cert. denied*, 143 S. Ct. 2509 (2023). Here, that is exactly what Agent Springmeyer proposes to do—rely on her specialized knowledge to offer testimony on aspects of drug trafficking.

Indeed, Agent Springmeyer has extensive experience and training within the realm of drug trafficking. For example, she has over two decades' worth of law enforcement experience, and many of her years have been spent overseeing complex drug trafficking investigations for the FBI. (ECF No. 269-1 at 5–6). The Government's disclosure reports that Agent Springmeyer relied on this experience and training and on her review of evidence in this case, such as the law enforcement reports, cell phone extractions, and ATF Firearms Trace Summary Reports, to form her opinions. The Court is thus satisfied that Agent Springmeyer has met the reliability requirement for admissibility.[17]

Turning to "fit," the "same standard of reliability extends to the step in the expert's analysis that 'fits' his or her conclusions to the case at hand. … [T]he standard is not that high." *Paoli*, 35 F.3d at 742, 745 (referring to the "fit" standard as "Rule 702's 'helpfulness' standard" and stating that an expert must have "good grounds" and a connection to a particular disputed factual

---

[17] Mr. Carothers's arguments regarding the reliability of Agent Springmeyer's methodology (or lack thereof) go to the *weight* of her testimony, and thus is better suited for cross-examination instead of a *Daubert* motion. *See Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 420 (3d Cir. 2002) ("In most cases, the lack of factual support for an expert opinion affects its weight rather than its admissibility."); *T.N. Incorporation, Ltd. v. Fid. Nat'l Info. Servs., Inc.*, No. 18-cv-5552, 2021 WL 5980048, at *10 (E.D. Pa. Dec. 17, 2021) (stating arguments that the expert should have "relied on more reliable evidence" or "should have considered more [evidence]" are issues that go to "the weight [of the expert's] testimony, rather than whether the [testimony] should be excluded … and [are] more appropriately addressed on trial through cross-examination"); *see also In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994) ("The evidentiary requirement of reliability is lower than the merits standard of correctness. *Daubert* states that a judge should find an expert opinion reliable under Rule 702 if it is based on 'good grounds.'").

issue in the case for the expert testimony to be "fit"). The Third Circuit has stated that "the operations of narcotics dealers[, including 'the meaning of coded drug language,'] have repeatedly been found to be a suitable topic for expert testimony because they are not within the common knowledge of the average juror." *Watson*, 260 F.3d at 307.

Applying her specialized knowledge to the facts of this case, the opinions provided in Agent Springmeyer's proposed testimony make conclusions on relevant issues—e.g., methods and language of drug traffickers. (*See* ECF No. 269-1 at 1–4). Agent Springmeyer's proposed testimony therefore will assist the trier of facts to determine material issues in this case because knowledge of such issues is not common to the average juror. Thus, the Court is satisfied that Agent Springmeyer's testimony and conclusions fit the facts of this case.

Finally, Mr. Carothers argues that Rule 704(b) bars Agent Springmeyer's testimony. For example, he criticizes her opinion that "[t]he totality of the items seized, particularly the controlled substances, multiple firearms, and cellular phones, strongly supports that the Defendants were involved in a drug trafficking operation." (ECF No. 269 at 19–20). "In sum," Mr. Carothers argues, "Agent Springmeyer's opinions 'necessarily impl[y] the purpose' of the items located at the scene in this case 'was to distribute drugs rather than to obtain drugs for personal use,' or for any other purposes[,]" which Mr. Carothers states "is a question the jury alone must decide." (*Id.* at 20–21) (quoting *United States v. Watson*, 260 F.3d 301, 309 (3d Cir. 2001)).

Rule 704(b) states that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed.

R. Evid. 704(b). "It is only as to the last step in the inferential process[—]a conclusion as to the defendant's mental state[—]that Rule 704(b) commands the expert to be silent." *United States v. Womack*, 55 F.4th 219, 229 (3d Cir. 2022), *cert. denied sub nom. Whitehead v. United States*, 144 S. Ct. 1012 (2024).

> In *Womack*, the Third Circuit stated:
>
> "[E]xperienced narcotics agent[s] may testify about the significance of certain conduct or methods of operation to the drug distribution business, as such testimony is often helpful in assisting the trier of fact understand the evidence." *United States v. Griffith*, 118 F.3d 318, 321 (5th Cir. 1997) (quoting *United States v. Washington*, 44 F.3d 1271, 1283 (5th Cir. 1995)). Thus, "[e]xpert testimony concerning the *modus operandi* of individuals involved in drug trafficking does not violate Rule 704(b)." *United States v. Watson*, 260 F.3d 301, 308 (3d Cir. 2001). For example, an expert may testify about the various counter-surveillance techniques used by drug dealers to avoid detection by the police. *Id.*

*Womack*, 55 F.4th at 228–29.

Agent Springmeyer's proposed testimony complies with Rule 704(b) in so far as it discusses the significance of the evidence as it relates to the conduct or methods of operation of a drug conspiracy. (*See* ECF No. 269-1 at 1–4). Explaining, for example, that the firearms, drugs, and scale are "tools of the trade" of a drug conspiracy, is admissible expert testimony because it stops at "the last step of the inferential process." *Womack*, 55 F.4th at 229. However, to the extent that Agent Springmeyer's testimony provides that the firearms, drugs, and scale are "tools of the trade" of a drug conspiracy, *which indicates that Mr. Carothers was a member of said drug conspiracy*, such testimony is inadmissible because intrinsic in that testimony is an opinion of an element of the charged crime (namely, knowledge and involvement in a drug conspiracy). Accordingly, in addition to satisfying Rule 702, the Court holds that Agent Springmeyer's proposed testimony

does not violate Rule 704(b), so long as Agent Springmeyer does not opine directly on whether the evidence supports an element of the crimes charged in this case.

The Court therefore denies Mr. Carothers's Motion to Exclude Improper Expert Testimony of Special Agent Karen Springmeyer at ECF No. 269.

### 2. The Fed. R. Crim. P. 16(a)(1)(G) Motion

As alluded to above, the Government provided its disclosure and notice of the expert testimony it intends to offer from Agent Springmeyer on September 23, 2024. (ECF No. 269-1.) According to Mr. Carothers, "the [G]overnment's disclosure letter suggests that Agent Springmeyer intends to offer additional opinions about other, unidentified text messages—and those opinions have not been disclosed to the defense." (ECF No. 272 at 2).

Mr. Carothers directs the Court's attention to the following text, and specifically the emphasized statements:

> Cellular phones are an indispensable tool of the drug trafficking trade. Drug traffickers often use multiple cellular phones to conduct their business. Some drug traffickers cycle through new phones as a means to thwart law enforcement detection. Nevertheless, such drug traffickers often retain old phones in order to access the data saved on those phones, such as contact information for associates. The digital extractions of the phones seized from the Defendants contain communications consistent with the distribution of controlled substances. *The bulleted paragraphs below offer examples of communications which [Agent] Springmeyer intends to interpret at trial. It should be noted that these are just a sampling and not all the communications that she will provide an opinion on.*

(ECF No. 269-1 at 3) (emphasis added). Subsequent to this paragraph are three bullet points that each contain an example of the related testimony that Agent Springmeyer will opine on.[18]

---

[18] The text of these three bullet points is as follows:

- On September 27, 2019, a text sent to Defendant Carothers from Defendant Waulk stated, "T took my phone on accident but I'm thinking unless stress will give us the q for the 2 I'ma grab a quick

Because "the disclosure letter itself states that it contains only 'a sampling' and 'not all the communications that she will provide an opinion on[,]'" Mr. Carothers requests that the Court "limit Agent Springmeyer's testimony, if it is admissible at all, to the opinions disclosed by the [G]overnment in its September 23, 2024, letter[,]" pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G).

Conversely, the Government argues that Mr. Carothers's argument is the "result of a misreading of Rule 16 and the disclosure." (ECF No. 297 at 12). The Government claims that "the objective of Rule 16 is plainly satisfied: as a result of the disclosure, [Mr.] Carothers is on notice that [Agent] Springmeyer has extensive experience about the methods, practices, and language of drug dealers. And [Mr.] Carothers is on notice that [Agent] Springmeyer will opine at trial that 'digital extractions of the phones seized from [Messrs. Carothers and Waulk] contain

---

Bally off someone". Ten minutes later, Defendant Carothers sent Defendant Waulk a reply text stating, "Ask him be probably will I'm bout to buss a move RN some light doe". Drug customers will often reference a 3.5 gram portion of crack cocaine as a "bally".

- Also, in an October 3, 2019 text, a drug customer wrote to Defendant Carothers asking, "think you can throw me a little extra since I brought u 80 so I can make a little more to come down with shit if I knew dude was gonna want I would have just waited and got a g off u for the 80 and made an extra 40 to come back with". Defendant Carothers responded, "I'll give you 50". On that same day, the drug customer sent a text to Defendant Carothers thanking him for the extra money, "appreciate the extra bro bro gonna try and get everyone together for one pick up a day or so, also what kind of deals u give me in bulk like how much a gram for anything over 3 4 Hindi, my next good pay ill dump right into bulk looking at 1200 or so but I need to more than double my money". Finally, the drug customer explained to Defendant Carothers, "good looks I might be trying to get some powder tomorrow, whats your man charge a gram". I believe the customer is thanking Carothers for the extra $50 worth of cocaine base – Carothers didn't give the customer $50.

- An October 12, 2019, text from a drug customer to Defendant Carothers asks "you get me on a 50 front I got 2 people that wants in Altoona I'm grabbing their 50 and another 50 on the way back so then we will be good money wise, let me know asap", to which Defendant Carothers responds, "no fronts". The same customer sent a text to Defendant Carothers on October 19, 2019, notifying him that ""yo yo I got 25 of my own bread, u get me on a 30 and I'll bring 60 back".

(ECF No. 269-1 at 4–5).

communication consistent with the distribution of controlled substances.'" (*Id.* at 13) (quoting

ECF No. 269-1 at 3).

In relevant part, Rule 16(a)(1)(G) provides the following:

(i) Duty to Disclose.  At the defendant's request, the government must disclose to the defendant, in writing, the information required by (iii) for *any testimony* that the government intends to use at trial under Federal Rules of Evidence 702, 703, or 705 during its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C). …

(iii) Contents of the Disclosure. The disclosure for each expert witness must contain:
- a *complete* statement of *all* opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C);
- the bases and reasons for them;
- the witness's qualifications, including a list of all publications authored in the previous 10 years; and
- a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

Fed. R. Crim. P. 16(a)(1)(G)(i), (iii) (emphasis added).

Rule 16's duty to disclose "is intended  to minimize surprise that often results from

unexpected expert testimony, reduce the need for continuances, and to provide the opponent

with a fair opportunity to test the merit of the expert's testimony through focused cross-

examination." Fed. R. Crim. P. 16 advisory committee's note to 1993 amendment; *see United States

v. Mitchell*, No. 2:09-cr-105, 2013 WL 12202563, at *1 (W.D. Pa. Oct. 7, 2013) (same); *United States

v. Cruz*, 363 F.3d 187, 196 n.2 (2d Cir. 2004) (same).  The Advisory Committee's explanation of the

amendment to the Rule that made necessary "a complete statement" of the witness's opinions

and reasons for those opinions states: "The amendment requires a complete statement of all

opinions the expert will provide, but does not require a verbatim recitation of the testimony the expert will give at trial." Fed. R. Crim. P. 16 advisory committee note to 2022 amendment.

Here, the Government disclosed the opinions that Agent Springmeyer will testify to vis-à-vis cell phone communication. Although the Government did not provide an exhaustive list of every "example[] of communications which [Agent] Springmeyer intends to interpret at trial[,]" (ECF No. 297 at 13), each example is not in itself a distinct opinion. Mr. Carothers does not cite any authority for his narrow interpretation of Rule 16, and the Court cannot find any case law supporting the interpretation. Accordingly, the Court believes that the Government's disclosure satisfies the requirement of Rule 16(a)(1)(G). *Cf. Cruz*, 363 F.3d at 196 n.2. (noting that the government violated Rule 16(a)(1)(G) when the government represented to the defendant that it would comply with the disclosure requirement but then called a witness that the government never provided any disclosure for).

The Court therefore denies Mr. Carothers's Motion in Limine to Preclude Special Agent Springmeyer from Offering Expert Opinions Beyond Those That Have Been Disclosed by the Government Under FRCP 16(a)(1)(G) at ECF No. 272.

### c. Motion Regarding Agent Duffalo

As previously discussed, to establish a violation of 18 U.S.C. § 922(g)(1), one of the elements that the Government must prove is possession of a firearm "in or affecting commerce." 18 U.S.C. § 922(g)(1). "[T]estimony that [a] firearm seized … had moved in interstate commerce," e.g., the firearm or ammunition was manufactured outside the state in which the possession occurred, satisfies this "jurisdictional element." *United States v. Gateward*, 84 F.3d 670, 672 (3d Cir. 1996); *United States v. Shambry*, 392 F.3d 631, 634 (3d Cir. 2004). The Government intends to call

Agent Duffalo at trial as an "expert witness to present specialized testimony on the interstate nexus determination of the firearms involved in this case." (ECF No. 284-1 at 1). Agent Duffalo's opinions are based and reasoned … upon law enforcement reports related to the search of the [vehicle that Mr. Carothers drove], ATF Firearms Trace Summary Reports, and other reference materials." (*Id.*).[19]

Mr. Carothers filed a Motion in Limine to "exclude from trial improper 'expert' testimony [of Agent Duffalo] regarding the locations where the firearms and ammunition Mr. Carothers is accused of possessing were allegedly manufactured." (ECF No. 284 at 1). Mr. Carothers argues that Agent Duffalo's testimony "(1) does not comport with the requirements for 'expert' testimony under Federal Rules of Evidence 702 [and] 703; (2) is inadmissible hearsay under Federal Rule of Evidence 802; and (3) violates Mr. Carothers's constitutional rights under the Sixth Amendment's Confrontation Clause." (*Id.* at 2).

The Government argues the opposite: (i) Agent Duffalo's testimony "is proper expert testimony pursuant to Federal Rules of Evidence 702 and 703; [ii] it is not hearsay; and [iii] it does not violate [Mr. Carothers's] Sixth Amendment rights." (ECF No. 297 at 48).

---

[19] More specifically, the Government's attached Report of Investigation ("ROI") (ECF No. 284-1 at 5–6) adds that Agent Duffalo offers his opinions based upon his "training, prior experience, and research." (*Id.* at 5). His research "reference[ed] the [ATF] list of firearm manufacturers, the 42nd Edition Blue Book of Gun Values, Gun Digest 2022 Standard Catalog of Firearms as well as the manufacturer's website." (*Id.*). According to the ROI, "[t]hese references are widely known and used by both law enforcement and civilian firearms experts to obtain information about firearms and their respective manufacturers, including a firearm's place of manufacture and other matters of interest related to firearms. They are routinely relied upon to determine the place of manufacture of firearms." (*Id.*).

### 1. Expert Testimony (Fed. R. Evid. 702 & 703)

Regarding Mr. Carothers's first argument, he states that "neither the location of a manufacturing plant nor the actual place a specific firearm is manufactured falls within Rule 702 because neither can fairly be described as 'specialized knowledge.'" (ECF No. 284 at 3). Mr. Carothers adds that such testimony will not "assist the trier of fact" because "'an ordinary juror is abundantly qualified to properly assess direct evidence of a physical location.'" (*Id.* at 3) (quoting *United States v. Corey*, 207 F.3d 84, 96 (1st Cir. 2000) (Torruella, C.J., dissenting)). Neither of these arguments holds merit against Third Circuit precedent.

An expert's testimony must be based on the expert's "specialized knowledge" (reliable) that will "help the trier of fact to understand the evidence or to determine a fact in issue" (fit). Fed. R. Evid. 702(a). Whether these standards are met is a question within the Court's discretion. *See* Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible.").

The Third Circuit and the district courts within have consistently held that ATF Special Agents' opinions regarding the interstate commerce requirement of Section 922(g)(1) equate to testimony that is both based upon specialized knowledge and helpful to the jury. *See United States v. Staples*, 266 F. App'x 167, 170 (3d Cir. 2008) ("[The defendant] claims that the [d]istrict [c]ourt erred under Rules 702 and 703 … when it admitted testimony of an ATF Special Agent to prove the interstate commerce requirement of § 922(g)(1). … [The defendant's] Rule 702 argument hardly merits comment because it is plainly contrary to our precedents."); *Shambry*, 392 F.3d at 633 ("[AFT] Agent John Leonard … was qualified as an expert witness and opined that the gun was manufactured in Massachusetts and necessarily traveled in interstate commerce before being

found in [the defendant's] possession in New Jersey."); *United States v. Singletary*, 268 F.3d 196, 197–98 (3d Cir. 2001) ("At trial, the Government established through the undisputed expert testimony of [ATF] Agent James J. Uvena … that the gun in question was manufactured in Brazil, imported into the United States through Atlanta, Georgia, and eventually sent to a firearms dealer in Texas in 1973."); *United States v. Layne*, No. A. 08-cr-605, 2009 WL 3081645, at *1 (E.D. Pa. Sept. 24, 2009) ("The Government also presented an expert report from [ATF] Agent Thomas Pietrowicz … Petrovich reported the Springfield Armory XD was manufactured in Croatia for an Illinois company, Springfield Inc. The firearm was owned by several different individuals in Philadelphia before it was seized from [the defendant]."); *see also United States v. Sickles*, 524 F. Supp. 506, 512 (D. Del. 1981), *aff'd*, 688 F.2d 827 (3d Cir. 1982).  Accordingly, the Court finds that Agent Duffalo's proposed testimony is based off of his specialized knowledge (reliable) and will be helpful to the jury (fit).[20]  Stated differently, his proposed testimony satisfies Rule 702.

Mr. Carothers also argues that Agent Duffalo's testimony will violate Rule 703 because Agent Duffalo did not "reasonably rely" on inadmissible evidence—namely, he relied on "ATF[] in-house reference materials."  (ECF No. 283 at 4–5).  Rule 703 states: "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. *If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. …*"  Fed. R. Evid. 703 (emphasis added).

---

[20] Of course, the ultimate decision of whether the at-issue firearms traveled through interstate commerce is within the province of the jury.  Agent Duffalo's opinion is not in any way binding on the jury, and the Government still must prove the interstate-commerce element beyond a reasonable doubt.

The Third Circuit and its sister courts have expressly permitted ATF Special Agents to "rely upon [their] experience and the ATF database and reference materials" when testifying as experts regarding the interstate nexus. *United States v. Staples*, 266 F. App'x 167, 170 (3d Cir. 2008); *see also United States v. Corey*, 207 F.3d 84, 89, 89 n.7 (1st Cir. 2000) (collecting cases supporting the statement that "[t]he case law clearly reflects that ['technical reference manuals and materials maintained at the ATF research libraries'] are types of materials commonly consulted by firearms experts"); *United States v. Larry*, 126 F.3d 1077, 1078 (8th Cir. 1997) (rejecting the defendant's argument that "the Government's witness from the ATF was not qualified as an expert on ammunition manufacture[]" because "[t]he agent had extensive firearms training and experience, and access to the ATF's data on ammunition manufacturers"); *United States v. Ware*, 914 F.2d 997, 1003 (7th Cir. 1990) ("The facts and data relied upon by [ATF] Agent Prebe included: (i) the markings on the shotgun; (ii) various ATF publications and lists; and (iii) various firearms trade books, magazines, and reference materials. This information was used by Agent Prebe to arrive at his conclusion that the shotgun was manufactured in Massachusetts and traveled across state lines. Of course, experts in the field of firearms identification rely on this type of information with regard to the issue of interstate transportation of firearms and such reliance is reasonable.").

Here, Agent Duffalo's reliance on the ATF in-house materials was reasonable because experts in the field of firearm and ammunition manufacturing reasonably rely on ATF-created publications and lists. Accordingly, the Court finds that Agent Duffalo reasonably relied on facts and information in preparing his testimony. Thus, in addition to satisfying Rule 702, Agent Duffalo's proposed testimony satisfies Rule 703.

### 2. Hearsay (Fed. R. Evid. 802 & 803)

As previously mentioned, hearsay is an out-of-court statement being used for the truth of the matter asserted. Fed. R. Evid. 801(c). Under Federal Rule of Evidence 802, "[h]earsay is not admissible unless any of the following provides otherwise: [i] a federal statute; [ii] [the Federal Rules of Evidence]; or [iii] other rules prescribed by the Supreme Court."

According to the Government, Agent Duffalo will provide three opinions: (a) Interstate commerce was affected by the movement of the firearms[;] (b) [t]he firearms … were not manufactured in the Commonwealth of Pennsylvania and are not antique firearms[; and] (c) [t]he [relevant] firearms … meet the definition of a 'firearm' as defined by the 42nd Edition Blue Book of Gun Values, Gun Digest 2022 Standard Catalog of Firearms, as well as the firearm manufacturer's website." (ECF No. 284-1 at 1–2).

An expert witness may testify in a trial even when that witness's opinion is based upon inadmissible hearsay, so long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject[.]" Fed. R. Evid. 703; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) ("Rule 703 provides that expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts or data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'"); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 748 (3d Cir. 1994) ("Rule 703 permits experts to rely upon hearsay. The guarantee of trustworthiness is that it be of the kind normally employed by experts in the field.").

Just because Agent Duffalo's proposed testimony may be *in part* based upon his review of what is potentially inadmissible hearsay, does not inherently render *his own* testimony

inadmissible. Here, the Court has no evidence that "the [G]overnment [is] seek[ing] to smuggle out-of-court statements from ATF's internal reference materials into Mr. Carothers's trial to prove the truth of the facts that they assert[.]" (ECF No. 284 at 6). Rather, the Court only has evidence that Agent Duffalo intends to present his own *in-court* statements regarding his opinion. The fact that Agent Duffalo relied on evidence that could be considered inadmissible is of no consequence because, as analyzed above, Agent Duffalo reasonably relied on the ATF "internal reference materials." Accordingly, Agent Duffalo's testimony does not violate the Federal Rules of Evidence's prohibition against hearsay.[21] Agent Duffalo's proposed testimony is admissible.

The Court therefore denies Mr. Carothers's Motion in Limine to Exclude Expert Testimony of ATF Special Agent Daniel Duffalo About Locations Where Firearms and Ammunition Were Manufactured at ECF No. 284.

### d.  Text-Message Exclusion Motions

Mr. Carothers filed six Motions that are specific to excluding text-message evidence seized from one of the cell phones ("TCL 1") recovered by the PSP in this case. These Motions seek to exclude text messages identified by the Government as (i) "TCL 1 – Bro Conversation" (ECF No. 275), (ii) "TCL 1 – Jakr Conversation" (ECF No. 276), (iii) "TCL 1 – Shelly Conversation" (ECF No.

---

[21] Because there is no hearsay issue, there can be no Sixth Amendment Confrontation Clause issue. *See Smith v. Arizona*, 144 S. Ct. 1785, 1792 (2024) ("[T]he [Confrontation] Clause bars only the introduction of hearsay[.]"). There also is no Confrontation Clause issue because Agent Duffalo will be present in court and Mr. Carothers will have the ability to cross-examine him. *See Crawford*, 541 U.S. at 59 ("Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.").

277), (iv) "TCL 1 – Stresd Conversation" (ECF No. 278), (v) "TCL 1 – Tone Conversation" (ECF No. 279), and (vi) "TCL 1 – Wiz Conversation" (ECF No. 280).[22]

Regarding the substance of the contested conversations—the "Bro," "Jakr," "Shelly," and "Stresd" conversations—Mr. Carothers argues that the messages in the respective conversations are (i) irrelevant or fail to satisfy the Rule 403 balancing test, (ii) impermissible hearsay, and/or (iii) improper character evidence under Rule 404(b).  (ECF No. 275 at 1–2; ECF No. 276 at 2; ECF No. 277 at 1; ECF No. 278 at 1–2).  The Government argues the inverse.  (*See* ECF No. 299 at 7–12).

### 1. Authenticity (Fed. R. Evid. 901)

Every text message at issue was either sent from TCL 1 or received by TCL 1.  The Government seized TCL 1 from the vehicle Mr. Carothers drove and crashed.  The Government alleges that TCL 1 is Mr. Carothers's phone.  (ECF No. 299 at 6).  Before admitting text messages from TCL 1 against Mr. Carothers, the Government must first authenticate them.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  Federal Rule of Evidence 901(b) provides a non-exhaustive list "of evidence that satisfies the requirement[]" of Rule 901(a), including "[t]estimony that an item is what it is claimed to be[]" and "[t]he appearance, contents, substance,

---

[22] The Government stated that it does not intend to present the messages contained in either the "Tone Conversation" or the "Wiz Conversation."  (ECF No. 299 at 2 n.1).  Accordingly, the Court denies as moot Mr. Carothers's (i) Motion in Limine to Exclude Text Messages Identified by the Government as "TCL1 - Tone Conversation" (ECF No. 279) and (ii) Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Wiz Conversation" (ECF No. 280).  *See United States v. Mitchell*, No. 2:09-cr-105, 2013 WL 12202656, at *3 (W.D. Pa. Sept. 27, 2013) (denying motions in limine as moot when the non-moving party "submits that it has no intention of introducing such evidence in its case-in-chief").  Therefore, the Court only analyzes the messages from the "Bro," "Jakr," "Shelly," and "Stresd" conversations.

internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(1), (4).

The Government bears the burden of proof for authentication. *Walsh v. Fusion Japanese Steakhouse, Inc.*, 585 F. Supp. 3d 766, 774 (W.D. Pa. 2022) ("The Third Circuit has recognized that the 'burden of proof for authentication is slight' and that circumstantial evidence may be sufficient." (quoting *McQueeney v. Wilmington Tr. Co.*, 779 F.2d 916, 928 (3d Cir. 1985))). "[T]here need be only a prima facie showing, to the court, of authenticity, not a full argument on admissibility. Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court. The only requirement is that there has been substantial evidence from which they could infer that the [item] was authentic." *United States v. Reilly*, 33 F.3d 1396, 1404 (3d Cir. 1994) (quoting *United States v. McGlory*, 968 F.2d 309, 328–29 (3d Cir. 1992)).

In its Omnibus Response to Defendant's Motions in Limine Regarding Text Message Evidence, the Government sets forth a non-exhaustive list of evidence that it anticipates offering to show that TCL 1 was owned and used by Mr. Carothers. (*See* ECF No. 299 at 6–7). This evidence includes "selfie photographs depicting [Mr.] Carothers ([Mr.] Carothers is plainly identifiable in these photographs based on his physical appearance and distinctive tattoos), text messages in which [Mr.] Carothers identifies himself to others as 'DC' (short for Derik Carothers), and contact list information associated with contact 'Ma,' which is associated with a known telephone number for Carothers's mother." (*Id.* at 6). Assuming that the Government produces the evidence stated in its Response, the Court finds that the Government can make out its prima

facie case of authenticity that TCL 1 was owned and used by Mr. Carothers. The Court proceeds with its analysis with this understanding.

### 2.  The "Bro Conversation"

The "Bro Conversation" consists of 62 text messages, which span from September 24, 2019 to October 19, 2019. (ECF No. 275-1). According to the Government, these messages are between TCL 1 (according to the Government, Mr. Carothers) and TCL 2 (according to the Government, Mr. Waulk/"Bro"). (ECF No. 299 at 7).[23] Mr. Carothers's first argument is that "all of the incoming text messages sent *to* the phone by 'Bro' are inadmissible hearsay not subject to any exception." (ECF No. 275 at 3).[24] His second argument is that the text messages "are irrelevant, unduly prejudicial, and pose a serious risk of jury confusion under F.R.E. 402 & 403." (*Id.* at 4). Mr. Carothers's third argument is that a specific reference allegedly related to drugs, as discussed below, "is improper character evidence under F.R.E. 404(b)." (*Id.* at 6). Conversely, the Government claims that none of the messages are hearsay because "the outgoing messages … are statements of a party opponent and the incoming messages … are non-hearsay statements of a co[-]conspirator[;]" the messages are relevant and not prejudicial; and the messages are intrinsic evidence because they "directly prove the elements of the offense at Count I … and Count II." (ECF No. 299 at 8, 8 n.2).

---

[23] TCL 2 is the other cell phone that the Government seized from the vehicle Mr. Carothers drove and crashed. *See* n.25, *infra*, and accompanying text.

[24] Mr. Carothers does not argue that the text messages sent *from* the phone are hearsay. Indeed, if the Government authenticates the text messages as being *from* Mr. Carothers, then these messages fall squarely within the exemption of opposing party statement. Fed. R. Evid. 801(d)(2)(A).

###### i.    Hearsay (Fed. R. Evid. 801 & 802)

As discussed above, hearsay is an out-of-court statement being used for the truth of the matter asserted.  Fed. R. Evid. 801(c).  A statement offered against an opposing party that "was made by the party's co[-]conspirator during and in furtherance of the conspiracy," however, is not hearsay.  Fed. R. Evid. 801(d)(2)(E).  "In order for an out-of-court statement to be admissible pursuant to Rule 801(d)(2)(E), the district court must find by a preponderance of the evidence that: (1) a conspiracy existed; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy."  *United States v. Ellis*, 156 F.3d 493, 496 (3d Cir. 1998); *Black Bear Energy Servs., Inc. v. Youngstown Pipe & Steel, LLC*, 551 F. Supp. 3d 555, 563 (W.D. Pa. 2021) ("The preponderance standard simply requires the proponent of the statement's admissibility to present sufficient proof leaving the trial judge to find "'that the existence of the contested fact is more probable than its non-existence.'" (quoting *United States v. Ammar*, 714 F.2d 238, 250 (3d Cir. 1983))).  "[A] court, in making a preliminary factual determination under Rule 801(d)(2)(E), may examine the hearsay statements sought to be admitted."  *Bourjaily v. United States*, 483 U.S. 171, 181 (1987).  *But see id.* at 180 ("We think that there is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy.").  Under Third Circuit precedent, district courts may "conditionally admit the challenged conversation subject to the requirement that the government make its Rule 801(d)(2)(E) showing by the close of its case."  *United States v. Weaver*, 507 F.3d 178, 187 (3d Cir. 2007) (cleaned up); *United States v. Onyenso*, 615 F. App'x 734, 737 (3d Cir. 2015).

Here, the Court conditionally admits the text messages of the "Bro Conversation," subject to the requirement that the Government makes its Rule 801(d)(2)(E) showing by the close of its case.[25]  First, the Court finds that, by the requisite preponderance of the evidence standard, a conspiracy existed between Messrs. Carothers and Waulk.  In addition to the text messages, which appear to make drug-related references, evidence of a drug conspiracy (e.g., drugs and firearms) can be linked to both Mr. Carothers and Mr. Waulk.  Second, that same evidence makes it more likely than not that Mr. Carothers and Mr. Waulk were both members of the alleged conspiracy.  Third, the statements were made during the course of the alleged conspiracy.  *See* Section III.d.2.ii, *infra*.  Lastly, the text messages were more likely than not in furtherance of the alleged conspiracy because of their apparent drug-related references.  *See id.*  The Court therefore turns to Rules 401, 402, and 403.

### ii.    Relevancy and 403 Balancing (Fed. R. Evid. 401, 402, & 403)

"Evidence is relevant if: (a) it has *any* tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added).  "The bar for what constitutes relevant evidence is low." *Forrest v. Parry*, 930 F.3d 93, 114 (3d Cir. 2019) (collecting cases).  "Relevant evidence is admissible unless any of the following provides otherwise: [i] the United States Constitution; [ii] a federal statute; [iii] [the Federal Rules of Evidence]; or [iv] other rules prescribed by the Supreme Court." Fed. R. Evid. 402.

---

[25] The Government states it "will present evidence to show that TCL 2 was used by … Mr. Waulk."  (ECF No. 299 at 7).  Because TCL 1 and TCL 2 were recovered from the search of the vehicle crash and because Mr. Waulk and Mr. Carothers are brothers, the Court precedes with the understanding that the Government can make out its prima facie case of authenticity that TCL 2 was owned and used by Mr. Waulk.

Mr. Carothers makes two relevancy arguments.  First, he points out that "22 of the 'Bro' text messages date to September 2019[, but] the [G]overnment has only charged a conspiracy occurring 'in and around October 2019.'"  (ECF No. 275 at 4).  Thus, according to Mr. Carothers, "[e]vidence pre-dating the alleged conspiracy has no tendency to make a fact more or less probable than it would be without the evidence."  (*Id.*) (internal quotations omitted).

The only support that Mr. Carothers cites for this proposition is a Northern District of Illinois case: *United States v. Davis*, No. 99-cr-928, 2001 WL 1195729 (N.D. Ill. Oct. 9, 2001).  *Davis* is distinguishable.  There, the court held that testimony from a government informant about "his dealings with the defendant … , which predated the charged conspiracy by nearly two years[,]" was irrelevant.  *Id.* at *2.  Moreover, in *Davis*, the government's motion did not provide any support for its argument that, without the informant's testimony, the jury would lack context regarding certain evidence.  *Id.*  Finally, the court never invoked Federal Rule of Evidence 401 or 402.  Rather, the court rejected the government's argument that the evidence was "inextricably intertwined" with the conspiracy; thus, the argument sounded in a character evidence challenge, not relevancy.

Here, the 22 contested text messages are dated, at the earliest, September 24, 2019—i.e., a week before October 2019—unlike the testimony in *Davis*, which regarded interactions two years prior to the charged conspiracy.  Furthermore, the Indictment in the present matter states "in and around October 2019," (ECF No. 1 at 1); it does not state a precise date.  The Court finds that less than a week before October 2019 is "reasonably near" to the date provided by the Indictment for the present issue.  *Real v. Shannon*, 600 F.3d 302, 308 (3d Cir. 2010) ("'Where "on or about" language is used, the government is not required to prove the exact dates, if a date reasonably

near is established.' … Our sister Circuits have held that where, as here, the government's evidence proves that an offense was committed within a month of the month specified in an 'on or about' indictment or information, the 'reasonably near' requirement is satisfied." (quoting *United States v. Nersesian*, 824 F.2d 1294, 1323 (2d Cir. 1987))) (collecting cases).

Second, Mr. Carothers objects to the subject matter of the "Bro" text messages, stating that "the [G]overnment cannot establish that they have any relevance to the conspiracy charged." (ECF No. 275 at 5). The Government argues that the text messages are evidence of the alleged drug conspiracy. (ECF No. 299 at 7–8). The Court agrees that the text messages are relevant. The text messages—such as "[TCL 1:] T took my phone on accident but I'm thinking unless stress will give us the q for the 2 I'ma grab a quick Bally off someone" and "[Bro:] Ask him he probably will I'm bout to buss a move RN some light doe"—have at least a tendency to make the fact that Mr. Carothers was engaged in a drug conspiracy more probable than without the text messages. (ECF No. 275-1 at 3). As Mr. Carothers concedes the reference to "grab a quick Bally" refers to a controlled substance. (*See* ECF No. 275 at 6–7).

In addition to being relevant due to their date, these text messages also are relevant due to their substance. The messages are probative because they tend to show that Mr. Carothers possessed and intended to distribute a controlled substance in agreement with Mr. Waulk, and thus they have a tendency to make the charged drug conspiracy more likely with the evidence. Further, that probative value is not substantially outweighed by any of the dangers listed in Rule 403.

The Court finds, however, that the text messages are only probative of the drug conspiracy, and therefore are relevant only in Phase I of the trial. During Phase II of the trial, the

jury already will have decided whether Mr. Carothers is innocent or guilty of the drug conspiracy charge. Accordingly, the probative value (and thus the relevance) of the text messages does not extend to Phase II of the trial.

### iii.    Character Evidence (Fed. R. Evid. 404(b))

Mr. Carothers argues that "[t]he conduct described by the ['grab a quick Bally'] message is relevant only insofar as it supports the improper inference that because Mr. Carothers may have previously purchased one drug, he must have also engaged in the charged conduct—conspiring to distribute a different form of that drug." (ECF No. 275 at 6–7). The Government argues that all the "Bro" text messages, including the "Bally" message, are admissible, intrinsic evidence. (ECF No. 299 at 8).

As discussed above, intrinsic evidence includes evidence that "directly proves the charged offense." *Green*, 617 F.3d at 245. Discussion with another alleged co-conspirator regarding the purchase of a controlled substance helps establish elements of Count I—e.g., that two or more persons agreed to distribute and possess a controlled substance, as well as knowledge of that agreement. Accordingly, the "Bro" text messages are intrinsic evidence directly proving the charged offense at Count I. The "Bro Conversation" is thus conditionally admissible during Phase I of the trial.

The Court therefore conditionally denies in part and grants in part Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Bro Conversation" at ECF No. 275.

### 3. The "Jakr Conversation"

The "Jakr Conversation" consists of 168 messages spanning from October 3, 2019 to October 23, 2019. (ECF No. 276-1). The Government alleges that these conversations are between TCL 1 (according to the Government, Mr. Carothers) and Jakr (according to the Government, a co-conspirator of Mr. Carothers). (ECF No. 299 at 9). Mr. Carothers makes the same legal arguments as he did with the "Bro" text messages, as does the Government. (ECF No. 276 at 2; ECF No. 299 at 9).

"Before the adoption of [Federal Rule of Evidence] 104(a), proof of a conspiracy required evidence external to the hearsay statement itself. This rule was premised on the belief that a statement should not be able to 'lift itself by its own bootstraps to the level of competent evidence.' *Bourjaily* made clear, however, that the adoption of [Rule] 104(a) changed the earlier rule, and that the co-conspirator's hearsay statement could be used to establish the existence of a conspiracy." *United States v. Gambino*, 926 F.2d 1355, 1361 (3d Cir. 1991) (quoting *Glasser v. United States*, 315 U.S. 60, 75 (1942)). Yet, "[i]n *Bourjaily*, the [Supreme] Court expressly declined to decide whether a trial court could rely 'solely upon [the declarant's] hearsay statements to determine that a conspiracy had been established by a preponderance of the evidence.'" *Id.* (quoting *Bourjaily*, 483 U.S. at 181). Likewise, in *Gambino*, the Third Circuit declined to answer the same issue that the *Bourjaily* Court declined to answer. *See id.*[26] Accordingly, the applicable standard is "[t]he Government may rely on the co-conspirator's statements themselves, if they

---

[26] In *Gambino*, the Third Circuit did note, however, that "every United States court of appeals that has addressed this issue has required some independent evidence." *Gambino*, 926 F.2d at 1361 n.5 (collecting cases).

are corroborated by independent evidence." *United States v. Turner*, 718 F.3d 226, 231 (3d Cir. 2013) (citing *Bourjaily*, 483 U.S. at 181; *Gambino*, 926 F.2d at 1361).

"The law is well settled that out-of-court statements may be admissible under Rule 801(d)(2)(E) even if the defendant is not formally charged with any conspiracy in the indictment." *United States v. Ellis*, 156 F.3d 493, 497 (3d Cir. 1998). "While a casual conversation between co-conspirators does not meet the 'in furtherance' requirement, 'statements between co-conspirators which provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy further the ends of the conspiracy and are admissible so long as the other requirements of Rule 801(d)(2)(E) are met.'" *United States v. Bobb*, 471 F.3d 491, 498 (3d Cir. 2006) (quoting *United States v. Ammar*, 714 F.2d 238, 252 (3d Cir. 1983)); *see also United States v. Badini*, 525 F. App'x 190, 192 (3d Cir. 2013) ("We have held that when a defendant is a buyer who has limited dealings with a conspiracy, we should examine several factors to determine whether his purchases are circumstantial evidence of an intent to join the conspiracy. Among the factors are the length of affiliation between buyer and seller, whether there is a demonstrated level of mutual trust, whether there is an established method of payment, and the extent to which the transactions are standardized." (quoting *Gibbs*, 190 F.3d at 197) (citations omitted)).

Assuming that the Government authenticates and attributes the use of TCL 1 to Mr. Carothers, then the outgoing "Jakr" text messages qualify as statements of a party opponent. Fed. R. Evid. 801. Regarding the incoming messages, however, the only evidence that the Court has to possibly link Jakr to the conspiracy are Jakr's declarations alone. Jakr's messages facially appear to be drug-related (e.g., "good looks i might be trying to get so powder tomorrow whats

your man charge a gram," (ECF No. 276-1 at 2)). Yet, there is nothing but the statements to link Jakr to the charged drug conspiracy between Mr. Carothers and Mr. Waulk. Although the standard is one of a totality of the circumstances, the Government has not linked any other evidence of the conspiracy (e.g., the drugs and firearms) to Jakr. Instead, the Government has only linked those pieces of evidence to Mr. Carothers and Mr. Waulk. Accordingly, the Court will exclude the incoming messages on grounds of hearsay because there is no independent evidence corroborating the notion that the TCL-1-Jakr text messages were in furtherance of the alleged conspiracy between Mr. Carothers and Mr. Waulk.

Alone, the non-hearsay text messages (i.e., the outgoing TCL 1 messages)—such as "pretty good," "Aii," and "yoyo"—have little to no probative value. With the Jakr messages excluded, the probative value of the non-hearsay text messages is substantially outweighed by the danger of confusing the issues and misleading the jury. Fed. R. Evid. 403. Accordingly, the "Jakr Conversation" is excluded in its entirety.

The Court therefore grants Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Jakr Conversation" at ECF No. 276.

### 4. The "Shelly Conversation"

The "Shelly Conversation" consists of 85 messages spanning from September 24, 2019 to October 20, 2019. (ECF No. 277-1). The Government alleges that these conversations are between TCL 1 (according to the Government, Mr. Carothers) and Shelly (according to the Government, a co-conspirator of Mr. Carothers). (ECF No. 299 at 11). Mr. Carothers makes the same legal arguments as he did regarding the "Bro" and "Jakr" text messages, as does the Government. (ECF No. 277 at 1–2; ECF No. 299 at 11).

The same rationale as discussed above in the "Jakr" Section applies.  Assuming that the Government authenticates and attributes the use of TCL 1 to Mr. Carothers, then the outgoing "Shelly" text messages qualify as statements of a party opponent.  Fed. R. Evid. 801.  Regarding the incoming messages, however, the Court has no evidence other than the text messages to link Shelly to the alleged conspiracy between Mr. Carothers and Mr. Waulk.  Moreover, unlike the "Jakr" text messages, the Shelly messages are not facially drug-related.  Again, although the standard is one of a totality of the circumstances, the Government has not linked any other evidence of the alleged conspiracy to Shelly.  Accordingly, the Court will exclude the incoming messages on grounds of hearsay.  The Court also will exclude the outgoing messages for the same reason it excluded the outgoing "Jakr" messages.  Fed. R. Evid. 403.  Thus, the "Shelly Conversation" is excluded in its entirety.[27]

The Court therefore grants Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Shelly Conversation" at ECF No. 277.

### 5.  The "Stresd Conversation"

The "Stresd Conversation" consists of ten text messages spanning from September 30, 2019 to October 9, 2019.  (ECF No. 278-1).  The Government alleges that these conversations are between TCL 1 (according to the Government, Mr. Carothers) and "Stresd" (a.k.a. "Stress," according to the Government).  The Government argues:

> First, the messages are relevant to corroborate the reference [Mr.] Carothers made to "Stress" in the conversation between [Mr.] Carothers and "Bro" ([Mr.] Waulk), … [and t]he corroboration of the reference to "[S]tress" by showing these communications between [Mr.] Carothers and 'Stresd' prove the conspiratorial

---

[27] Conditionally admitting evidence "should be 'carefully considered and sparingly utilized.'"  *Weaver*, 507 F.3d at 187–88 (quoting *Ammar*, 714 F.2d at 247).  While the Court is comfortable to conditionally admit the "Bro Conversation," the Court declines to extend such treatment to the "Jakr" and "Shelly" conversations.

> relationship between [Messrs.] Carothers and Waulk. Second, there is nothing
> inherently prejudicial about these messages as they generally consist of each party
> simply saying "Yo." Third, these messages do not imply any other crimes,
> wrongs, or acts. Fourth, while the messages sent by [Mr.] Carothers are non-
> hearsay statements of a party opponent, "Stresd's" messages are simply non-
> hearsay as they are not being offered to prove the truth of the matter asserted in
> them.

(ECF No. 299 at 12). The corroborating "Bro" text message that the Government is referencing is:

"T took my phone on accident but I'm thinking unless *stress* will give us the q for the 2 I'ma grab

a quick Bally off someone." (ECF No. 275-1 at 3) (emphasis added)

Mr. Carothers argues "[i]t is not at all clear that these texts have any relevance to this case,

and the Court should exclude them on that basis. FRE 401. To the extent that the government

intends to imply that these texts are somehow drug[-]related or otherwise related to this case,

they should be excluded for the same reasons that the 'Jakr' and 'Shelly' messages discussed in

Mr. Carothers' separate filings are inadmissible[.]" (ECF No. 278 at 1–2).

The text messages meet the low bar of relevancy because corroborating that Mr. Carothers

and "Bro"/Mr. Waulk referenced the same person, "Stresd," in the "Bro Conversation" can make

Mr. Carothers and Mr. Waulk's conspiratorial relationship more likely. Fed. R. Evid. 401. The

Court agrees with the Government that the text messages are not prejudicial because they largely

contain innocuous one-word texts, and thus the messages presently satisfy Rule 403 balancing.

The Court notes, however, the possibly confusing distinction between "stress" and "Stresd."

Nevertheless, the Court will permit the introduction of this evidence and leave the distinction for

argument—unless it becomes clear that the probative value of the text messages is substantially

outweighed by the danger of confusing or misleading the jury.

The Government implies that it does not intend to use the text messages for any impermissible propensity purpose. (*See* ECF No. 299 at 12). The Court believes that these messages do not imply any crime, wrong, act, or character trait (i.e., impermissible propensity evidence), and thus a Rule 404(b) analysis is unwarranted. *See Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 520 (3d Cir. 2003) ("Rule 404(b) … prohibits the admission of other acts evidence for the purpose of showing that an individual has a propensity or disposition to act in a particular manner.").[28]

Finally, because the Government is not using the text messages for the truth of the matter asserted, the text messages need not be analyzed for hearsay. *See United States v. Price*, 458 F.3d 202, 205 (3d Cir. 2006) (noting that statements that are not being used for the truth of the matter asserted—e.g., to provide "background to explain the context" of a message—are not hearsay); *see United States v. Lewisbey*, 843 F.3d 653, 658 (7th Cir. 2016) ("The text messages [the defendant] sent are his own statements and as such are excluded from the definition of hearsay by Rule 801(d)(2)(A). The messages he received were admitted not for the truth of the matter asserted but instead to provide context for [the defendant's own messages[.]"). Accordingly, the Court holds that the "Stresd Conversation" is admissible for the purpose mentioned by the Government.

Because the Court finds that the "Bro Conversation" is only relevant during Phase I of the trial, and because the Government's purpose for introducing the "Stresd Conversation" is to corroborate references in the "Bro Conversation," the "Stresd Conversation" is also only admissible during Phase I of the trial.

---

[28] To the extent the Government intends to use the "Stresd Conversation" to show that Mr. Carothers had a propensity or disposition to act in a particular manner, such use of the conversation is prohibited by Rule 404(b).

The Court therefore denies in part and grants in part Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Stresd Conversation" at ECF No. 278.

### IV.    Conclusion

For the foregoing reasons, the Court:

1. **GRANTS IN PART** and **DENIES IN PART** the Government's Motion in Limine and Notice of Intent to Present Evidence Pursuant to F.R.E. 404(b) (ECF No. 268);

2. **DENIES** Mr. Carothers's Motion to Exclude Improper Expert Testimony of Special Agent Karen Springmeyer and Request for Hearing Under Federal Rule of Evidence 702 (ECF No. 269);

3. **DENIES** Mr. Carothers's Motion in Limine to Preclude Special Agent Springmeyer from Offering Expert Opinions Beyond Those That Have Been Disclosed by the Government Under FRCP 16(a)(1)(G) (ECF No. 272);

4. **GRANTS IN PART** and **DENIES IN PART** Mr. Carothers's Motion in Limine to Exclude Evidence of Police Pursuit and Accident and the Entire Dash Camera Video or, in the Alternative, to Mute Sound and Only Show Relevant Clips of the Video to the Jury (ECF No. 274);

5. **CONDITIONALLY DENIES IN PART** and **GRANTS IN PART** Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Bro Conversation" (ECF No. 275);

6. **GRANTS** Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Jakr Conversation" (ECF No. 276);

7. **GRANTS** Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Shelly Conversation" (ECF No. 277);

8. **DENIES IN PART** and **GRANTS IN PART** Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Stresd Conversation" (ECF No. 278);

9. **DENIES AS MOOT** Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL1 - Tone Conversation" (ECF No. 279);

10. **DENIES AS MOOT** Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Wiz Conversation" (ECF No. 280); and

11. **DENIES** Mr. Carothers's Motion in Limine to Exclude Expert Testimony of ATF Special Agent Daniel Duffalo About Locations Where Firearms and Ammunition Were Manufactured (ECF No. 284).

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. 3:20-31-2 |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| DERIK CAROTHERS, | ) | |
| | ) | |
| Defendant. | ) | |

<u>ORDER</u>

**AND NOW**, this _24th_ day of October, 2024, upon consideration of the following Motions:

1.  The Government's Motion in Limine and Notice of Intent to Present Evidence Pursuant to F.R.E. 404(b) (ECF No. 268),

2.  Mr. Carothers's Motion to Exclude Improper Expert Testimony of Special Agent Karen Springmeyer and Request for Hearing Under Federal Rule of Evidence 702 (ECF No. 269),

3.  Mr. Carothers's Motion in Limine to Preclude Special Agent Springmeyer from Offering Expert Opinions Beyond Those That Have Been Disclosed by the Government Under FRCP 16(a)(1)(G) (ECF No. 272),

4.  Mr. Carothers's Motion in Limine to Exclude Evidence of Police Pursuit and Accident and the Entire Dash Camera Video or, in the Alternative, to Mute Sound and Only Show Relevant Clips of the Video to the Jury (ECF No. 274),

5.  Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Bro Conversation" (ECF No. 275),

6. Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Jakr Conversation" (ECF No. 276),

7. Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Shelly Conversation" (ECF No. 277),

8. Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Stresd Conversation" (ECF No. 278),

9. Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL1 - Tone Conversation" (ECF No. 279),

10. Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Wiz Conversation" (ECF No. 280), and

11. Mr. Carothers's Motion in Limine to Exclude Expert Testimony of ATF Special Agent Daniel Duffalo About Locations Where Firearms and Ammunition Were Manufactured (ECF No. 284).

and for the reasons set forth in the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that the Court:

1. **GRANTS IN PART** and **DENIES IN PART** the Government's Motion in Limine and Notice of Intent to Present Evidence Pursuant to F.R.E. 404(b) (ECF No. 268);

2. **DENIES** Mr. Carothers's Motion to Exclude Improper Expert Testimony of Special Agent Karen Springmeyer and Request for Hearing Under Federal Rule of Evidence 702 (ECF No. 269);

3. **DENIES** Mr. Carothers's Motion in Limine to Preclude Special Agent Springmeyer from Offering Expert Opinions Beyond Those That Have Been Disclosed by the Government Under FRCP 16(a)(1)(G) (ECF No. 272);

4. **GRANTS IN PART** and **DENIES IN PART** Mr. Carothers's Motion in Limine to Exclude Evidence of Police Pursuit and Accident and the Entire Dash Camera Video or, in the Alternative, to Mute Sound and Only Show Relevant Clips of the Video to the Jury (ECF No. 274);

5. **CONDITIONALLY DENIES IN PART** and **GRANTS IN PART** Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Bro Conversation" (ECF No. 275);

6. **GRANTS** Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Jakr Conversation" (ECF No. 276);

7. **GRANTS** Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Shelly Conversation" (ECF No. 277);

8. **DENIES IN PART** and **GRANTS IN PART** Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Stresd Conversation" (ECF No. 278);

9. **DENIES AS MOOT** Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL1 - Tone Conversation" (ECF No. 279);

10. **DENIES AS MOOT** Mr. Carothers's Motion in Limine to Exclude Text Messages Identified by the Government as "TCL 1 - Wiz Conversation" (ECF No. 280); and

11. **DENIES** Mr. Carothers's Motion in Limine to Exclude Expert Testimony of ATF Special Agent Daniel Duffalo About Locations Where Firearms and Ammunition Were Manufactured (ECF No. 284).

**BY THE COURT:**

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE